[Civ. No. 27552.   Second Dist., Div. Three.   Feb. 4, 1965.]

BERNICE WEST et al., Plaintiffs and Respondents, v.
U. L. C. CORP., Defendant and Appellant.

Irmas & Rutter, S. M. Irmas, Jr., and Donald J. Bell for Defendant and Appellant.

Simon Taub and Hyman Goldman for Plaintiffs and Respondents.

Harold W. Kennedy, County Counsel (Los Angeles), and Donald K. Byrne, Deputy County Counsel, as Amici Curiae on behalf of Plaintiffs and Respondents.

KAUS, J.—Appeal from an order refusing to vacate a default judgment on the ground that it was void.

The complaint herein was filed January 29, 1962. Its burden is that appellant, one of the defendants below, is the assignee of a first deed of trust on certain real property, which is also encumbered by a second deed of trust owned by respondents, plaintiffs below. Without going into the allegations in detail, the complaint amounts to a charge that appellant's deed of trust was obtained without consideration and that appellant and the owner of the real property in question collusively failed to make payments to reduce the amount secured by the first deed of trust, thereby reducing the value of respondents' deed of trust, which was of the purchase money variety. Appellant was alleged to be in the process of foreclosing on its security. The prayer, to the extent that it is relevant on this appeal, is analyzed later in this opinion.

Appellant made a general appearance, obtained an extension of time to plead but did not file a responsive pleading within the time allowed. Its default was entered March 23, 1962. Later, evidence was produced before Commissioner Weisz who, on July 25, 1962, signed a judgment which enjoined appellant from foreclosing on its security, declared that appellant's trust deed[1] had been "executed fraudulently and is hereby reformed to be the sum of Three Thousand Two Hundred Sixty-five Dollars ($3,265.00), bearing interest at seven per cent (7%) per annum from the date of this judgment." The judgment further provides as follows: ". . . that the promissory note executed by said BETTY STEIN for which said first trust deed purports to be the security and which purports to be in favor of the VINEMORE CORPORATION is hereby reformed to be the sum of Three Thousand Two Hundred Sixty-five Dollars ($3,265.00), bearing interest at seven per cent (7%) per annum from the date of this judgment."

Appellant apparently learned of the default and the default judgment more than six months after the entry of the default but less than six months after the entry of judgment. It immediately filed a motion for relief under Code of Civil Procedure section 473. Respondents then filed points and authorities in opposition to the motion, pointing out that it came too late because it was made more than six months after the entry of the default. Appellant then filed a reply memorandum in which it claimed for the first time that the motion was not too late because the judgment was void. The first reason adduced by appellant for its claim that the judgment was void was that Commissioner Weisz had no power to act. Appellant also claimed in its reply memorandum that the facts disclosed by its affidavits in support of the motion under Code of Civil Procedure section 473 lent themselves to an interpretation that the judgment was obtained by extrinsic fraud and mistake. This motion was denied on January 7, 1963.

Appellant then filed a second motion "upon the ground that the said judgment is void." The papers accompanying the motion disclose that the only reason for the claim of voidness was the lack of power in Commissioner Weisz to act.

This second motion was denied on February 14, 1963, and

---

[1] According to the complaint the first deed of trust secured an indebtedness of $25,000 which, because of accrued interest, had swollen to $43,000.

the present appeal is from that denial. The notice of appeal was filed March 19, 1963, more than 60 days after the denial of the first motion.

Respondents suggest that this court has no jurisdiction to entertain the appeal because, they say, the second motion merely called upon the court to overrule the ruling on the first motion on the same facts.

This is not so. The first motion was made on the ground ". . . that the failure of defendant U.L.C. Corp., to answer said complaint within the time allowed was due to the mistake, inadvertence, and excusable neglect on the part of said defendant's counsel . . ." It was only when appellant realized that the motion was late, that appellant in its reply memorandum claimed that the judgment was void. We doubt that it would have been proper for the court to rule on the issue of voidness, where the grounds alleged never embraced the point. (Code Civ. Proc., § 1010.) No effective appeal raising the question of voidness could have been taken from the order of January 7, 1963. The appeal was therefore timely. (3 Witkin, Cal. Procedure, pp. 2170-2172.)

■ We now turn to the merits. One point raised by appellant is that the relief granted exceeded that demanded in the complaint. Appellant's argument here is that Commissioner Weisz apparently reformed the note and deed of trust, although there was no prayer for reformation in the complaint.

Code of Civil Procedure section 580 says that the relief granted to the plaintiff ". . . cannot exceed that which he shall have demanded in his complaint."

The complaint sought, among other things:

1. A determination of the rights of the plaintiffs and the defendants in and to the real property.

2. A determination and adjudication of the validity of appellant's deed of trust.

3. A determination whether said deed of trust constitutes a lien on the real property in question.

4. A determination that the note is without consideration and void.

5. A determination that the trust deed constitutes an illegal cloud on the real property; and

6. A quieting of plaintiff's title against the defendants.

As a matter of fact respondents got over $3,000 less relief than they asked for. Apparently they were unable to prove the allegation of the complaint that the trust deed was given

without any consideration. Thus, instead of giving respondents the declaration they sought, namely that the note and deed of trust were wholly void, the court used reformation as a means by which it could give effect to its judgment that respondents were not entitled to all of the relief they wanted. The greater relief demanded necessarily included a prayer to carry lesser relief into effect.

Appellant's first attack on the power of Commissioner Weisz to act herein is based upon a rather myopic reading of Code of Civil Procedure section 259a, subdivision 6.[2]

Appellant's point is that since it is presumed that every word, phrase and provision of the section was intended to have some meaning and perform some useful office, the words "report on" would be meaningless if the commissioner could also conclusively determine the uncontested matters referred to. ■ True enough, but legislative intent should be gathered from the whole section, rather than from isolated parts. (*Mazza* v. *Austin,* 25 Cal.App.2d 85, 87-88 [76 P.2d 533].)

■ With this rule in mind it becomes apparent that in Code of Civil Procedure section 259a, subdivision 6, the Legislature intended to give the commissioners power to determine the matters coming within it, because in a situation where the Legislature merely wanted the commissioners to report their determinations to the court, it knew exactly how to express itself. Code of Civil Procedure section 259a, subdivision 5, begins as follows: "When ordered by the court appointing him so to do, to hear, and report his findings and conclusions to the court for approval, rejection or change . . . ." Harmonizing the two subdivisions, while trying to give some meaning to the words "report on" in Code of Civil Procedure section 259a, subdivision 6, it becomes apparent that under that subdivision the Legislature intended to leave it up to the court to say just exactly what it wanted the commissioner to do. In one case the court might want him to "hear and determine," in another merely to "hear and report on." The words used ". . . to hear, report on and determine" convey that thought with precision and economy. It is ap-

---

[2]Code Civ. Proc., § 259a, reads in part as follows: "Subject to the supervision of the court, every court commissioner of a county or city and county having a population of nine hundred thousand inhabitants or more shall, in addition to the powers and duties contained in section 259 of this code, have power: . . . 6. When ordered by the court appointing him so to do, to hear, report on and determine all uncontested actions and proceedings other than actions for divorce, maintenance or annulment of marriage."

parent that the Superior Court of Los Angeles County so interpreted the subdivision. (See Los Angeles Superior Court Rules, rule 4, § 8(b)(1).)

Appellant's next point is that Code of Civil Procedure section 259a in applying as it does only to counties having a population of 900,000 inhabitants or more, violates California Constitution, article IV, section 25, as being a local or special law regulating the practice of courts of justice. This contention can only be upheld if there is no reasonable basis for giving court commissioners of populous counties[3] the increased powers provided by Code of Civil Procedure section 259a. (*Bilyeu* v. *State Employees' Retirement System,* 58 Cal.2d 618, 623 [24 Cal.Rptr. 562, 375 P.2d 442].) Further, every presumption is in favor of the validity of the statute and the decision of the Legislature as to what is a sufficient distinction to warrant the additional powers given by Code of Civil Procedure section 259a " '. . . will not be overthrown by the courts unless it is palpably arbitrary and beyond rational doubt erroneous. . . . A distinction in legislation is not arbitrary if any set of facts reasonably can be conceived that would sustain it.' " (*State of California* v. *Industrial Acc. Com.,* 48 Cal.2d 365, 371 [310 P.2d 7].)

In this light the legislation must be upheld. Generally speaking the powers conferred on commissioners by Code of Civil Procedure section 259a relate to the routine duties of the court. It is a matter of common knowledge that there is a direct relationship between the amount of judicial business and the size of the population and also between the amount of judicial business and routine duties resulting therefrom. While generally speaking the Legislature has been responsive to population increases by creating more judicial positions, we cannot say that there is anything unreasonable about a legislative policy which, in effect, provides that when a county reaches a certain size, some of the duties of the judges may be shifted to commissioners. We see no legitimate distinction between the case before us and *Martin* v. *Superior Court,* 194 Cal. 93 [227 P. 762]; *People* v. *Richards,* 1 Cal.App. 566, 573-575 [82 P. 691] and *Noel* v. *Lewis,* 35 Cal.App. 658 [170 P. 857].

Finally in its closing brief appellant makes the point that Code of Civil Procedure section 259a violates California Constitution, article VI, section 14, because the rendering of

---

[3]Three counties, Los Angeles, San Diego and Alameda, have more than 900,000 inhabitants. Gov. Code, § 28020.

default judgments is not "chamber business."[4]  *Estate of Roberts*, 49 Cal.App.2d 71 [120 P.2d 933] holds that the words "chamber business" as used in the Constitution of 1879 mean "everything which was 'chamber business' in the superseded courts, as well as anything which the legislature might thereafter properly include in that term." (*Ibid.* p. 77.)  Code of Civil Procedure section 166 provides that judges may, at chambers "hear and determine all uncontested actions . . . ."

Undoubtedly there are limits to the Legislature's power to define "chamber business." We conclude however that they have not been reached.

The order appealed from is affirmed.

Shinn, P. J., and Ford, J., concurred.

---

[4]Cal. Const., art. VI, § 14, insofar as pertinent, reads as follows: "The Legislature may also provide for the appointment, by the several superior courts, of one or more commissioners in their respective counties, or cities and counties, with authority to perform chamber business of the judges of the superior courts, to take depositions, and to perform such other business connected with the administration of justice as may be prescribed by law."