Opinion
FILES, P. J.
 These three appeals were transferred from the Appellate Department of the Los Angeles Superior Court to this court pursuant to rule 62, California Rules of Court, for the purpose of settling an important question of law, that is, the constitutionality of Government Code section 72190, insofar as it authorizes a court commissioner to exercise the powers of a judge with respect to a traffic infraction case. We have concluded the section is a valid exercise of the power given to the Legislature by article VI, section 22 of the California Constitution.
Each of these cases arose from the issuance of a citation for a traffic infraction. In two cases the citations were for speeding (Veh. Code, § 22350) and in the other case for failure to stop at a stop sign (Veh. Code, § 22450). Each case was tried before a commissioner appointed by *49 the Beverly Hills Municipal Court. Each defendant pleaded not guilty, was tried, and found guilty by the court. Each appealed. None of the briefs on appeal raised any legally arguable ground for reversal. The appellate department, noting that the record did not show that any of these three defendants had consented to a trial before a commissioner, asked the district attorney to brief the question whether Government Code section 72190 was constitutional.
After receiving the brief of the district attorney, the appellate department filed its opinion reversing the three convictions upon the ground that the commissioner was not constitutionally empowered to try the cases.
California Constitution article VI, section 22, states: “The Legislature may provide for the appointment by trial courts of record of officers such as commissioners to perform subordinate judicial duties.”
The first paragraph of Government Code section 72190 provides: “Within the jurisdiction of the court and under the direction of the judges, commissioners, of municipal courts shall exercise all the powers and perform all of the duties authorized by law to be performed by commissioners of superior courts and such additional powers and duties as may be prescribed by law. At the direction of the judges, commissioners may have the same jurisdiction and exercise the same powers and duties as the judges of the court with respect to any infraction. The commissioners of municipal courts shall possess the same qualifications the law requires of a judge and shall hold office during the pleasure of the court appointing them and shall not engage in the private practice of law. They shall be ex officio deputy clerks.”
The second sentence of that section was added by chapter 959 of the Statutes of 1976, effective Januaiy 1, 1977.
Section 3 of chapter 959 states: “The Legislature finds and declares that the duties which municipal court commissioners and traffic referees are authorized to perform pursuant to this act are subordinate judicial duties within the meaning of Section 22 of Article VI of the California Constitution.”
Pursuant to that statute the Beverly Hills Municipal Court directed its commissioner to exercise the same powers and duties as are possessed by the judges with respect to any infraction.
*50 The constitutional question presented here requires an examination of the scope of “subordinate judicial duties” and the nature of the duties performed in the trial of traffic infraction cases.
In Rooney v. Vermont Investment Corp. (1973) 10 Cal.3d 351, 360 et seq. [110 Cal.Rptr. 353, 515 P.2d 297], the court analyzed in depth the meaning of “subordinate judicial duties,” an expression which came into the California Constitution with the 1966 revision of article VI. The court said (at p. 362) “The words ‘subordinate judicial duties’ were intended by the draftsmen as an appropriate constitutional phrase sufficiently broad to permit specific details to be later enacted or adopted by the legislative or rule-making agencies.”
The opinion pointed out that the duties referred to in section 22 included the duties which commissioners had been empowered to perform prior to 1966 by sections 259 and 259a of the Code of Civil Procedure. Many of the functions listed in those sections have to do with ex parte and uncontested matters. Commissioners are authorized to take testimony and make reports in contested matters, subject to review by a judge upon the request of a party. (Code Civ. Proc., §§ 259, subd. 2; 259a, subds. 2, 5.) But in the hearing of some of the uncontested matters, a commissioner may be required to decide significant issues of law and make findings of fact which have the same import and finality as though made by a judge. For example, in default hearings, the court is required to receive evidence, determine the facts established by the evidence, and apply the law to these facts notwithstanding that the defendant has failed to answer. (Code Civ. Proc., § 585.)
The Rooney case expressly held “. . . that section 259a, subdivision 6, providing for assignment to court commissioners of certain judicial duties with respect to uncontested matters, falls squarely within the scope of the legislative authority conferred by article VI, section 22 . . . .” (10 Cal.3d at p. 366.)
An illustration of the importance and complexity of the matters which a commissioner may lawfully decide is found in West v. U. L. C. Corp. (1965) 232 Cal.App.2d 85 [42 Cal.Rptr. 603], There the Court of Appeal upheld the power of a commissioner sitting in a default case under Code of Civil Procedure section 259a, subdivision 6, to reform a note and enjoin the foreclosure of the trust deed which secured the note.
The Rooney opinion, after referring to the pre-1966 powers of commissioners under Code of Civil Procedure sections 259 and 259a, said *51 (at p. 365): “Legislation enacted after the constitutional amendment became effective reflects a legislative judgment that the new provision authorized the continued assignment to court commissioners of judicial duties at the same or comparable levels of responsibility.”
Traffic infractions comprise the least serious of the offenses defined in the Vehicle Code. Other offenses, for which the offender may suffer imprisonment, suspension of the driving privilege, or a substantial fine, are classified as felonies or misdemeanors. (See Veh. Code, §§ 40000.1, 42000, 42001, 42002.) The punishment for an infraction is limited to a fine not exceeding $50 for the first offense, $100 for the second and $250 for the third offense within a year. (Veh. Code, § 42001.) The court may also order a person guilty of an infraction to attend a school for instruction in the operation of a motor vehicle. (Veh. Code, § 42005.)
Penal Code section 19c provides that a person charged with an infraction is not entitled to a jury trial, and is ordinarily not entitled to have the public defender or other counsel appointed at public expense to defend him.
The adjudication of traffic offenses is unique in our legal system.[1] One characteristic is that traffic infractions are by far the most numerous class of business in the municipal courts.[2]
*52 Traffic experts and the public agree that traffic law enforcement is “criminal” only in a limited procedural sense. The public and the legal system recognize that unsafe driving is a serious social problem, and the role of law enforcement is to promote traffic safety and improve driver behavior. For the most part, trials of traffic infractions involve no complex problems of law or fact.[3] Attorneys rarely appear in infraction cases for the simple reason that the stakes are not worth the cost. For a judge who has no special interest in the subject, traffic court is characterized by the pressure of high volume and the monotony of repetition.[4] In a large metropolitan court, where judicial assignments are influenced by seniority, traffic cases are assigned to the newest judges on the court, or to commissioners.
In some jurisdictions traffic infractions have been removed from the judicial branch and handled by administrative hearing officers attached to the executive agency which issues operator’s licenses. In 1975 the California Legislature requested the California Department of Motor Vehicles to undertake a study to determine the feasibility of adjudicating minor traffic cases administratively in this state. (Sen. Con. Res. No. 40, Stats. 1975, Res. ch. 86.) The department did conduct such a study and in April 1976 published its report which concluded, among other things, that administrative adjudication by legally trained hearing officers “would stabilize and enhance the quality and efficiency of infraction processing and adjudication.” (1 Cal. Dept. of Motor Vehicles; Administrative Adjudication of Traffic Offenses in Cal. p. 21.)
To avoid a conflict with the separation of powers requirement of the California Constitution, the report contemplated that the decisions of the *53 administrative hearing officers would be subject to judicial review in the superior court through a proceeding in mandamus under Code of Civil Procedure, section 1094.5. (Id., p. 142.) As a practical matter, such a review would be unavailable to most individuals who were aggrieved by an administrative decision. Mandate proceedings in the superior court (unlike traffic trials) are relatively complex and expensive, and are rarely attempted without the assistance of an attorney. Many persons would be unable and most would be unwilling to incur the expense of that kind of litigation to escape the administratively imposed sanction. Thus for all practical purposes, administrative adjudication would mean a final decision by a person who was not a judicial officer at all.
The California Legislature thus far has kept traffic adjudication within the judicial branch but with expanded use of subordinate judicial officers. The 1970 legislation on this subject was discussed by the Supreme Court in the Rooney opinion as follows; “In 1970, the Legislature enacted Government Code section 72190.1 authorizing municipal court commissioners to conduct arraignments if directed to perform such duties by the presiding or sole judge of the court. The same Legislature provided for the appointment by municipal courts of traffic referees with powers, at the direction of the court, to conduct arraignments, take pleas, grant continuances, and set cases for trial with respect to any misdemeanor violation of the Vehicle Code, and to impose fines or order attendance at traffic school when there has been a plea of guilty or nolo contendere to certain minor traffic violations. . . . The Legislature thus must be deemed to have concluded that the constitutional provision empowered it not only to authorize the appointment of traffic referees but to specify as subordinate judicial duties the hearing and determination of particular preliminary or uncontested matters that traffic referees and commissioners could be assigned to perform. This conclusion carries with it ‘the strong presumption in favor of the Legislature’s interpretation of a provision of the Constitution.’ [Citation.]” (10 Cal.3d at pp. 365-366.)
The 1972 Legislature authorized the appointment of traffic trial commissioners and supporting staff for the purpose of testing the feasibility of using subordinate judicial officers for the adjudication of traffic cases. (Stats. 1972, ch. 57.) That project resulted in a study and report by the Judicial Council which recommended, among other things, that the Government Code be amended to permit a commissioner or referee, when authorized by the court, to have the powers of a judge in traffic infraction matters. The 1976 Legislature responded by amending into section 72190 the language which is the subject of the present *54 appeals, and adding the same language in section 72401 with respect to traffic referees.
The 1976 statute, reflecting the Legislature’s interpretation of section 22 of article VI of the state Constitution, is entitled to the same strong presumption of constitutionality as the 1970 legislation.
Webster’s Third New International Dictionary defines “subordinate” as “placed in a lower order, class or rank; holding a lower or inferior position. . . .”
In its literal sense, the word “subordinate” is a relative term. In classifying the trial of infractions as a subordinate judicial duty, the Legislature was entitled to consider that the municipal courts are required to handle a broad spectrum of cases, many of which raise complex and sensitive factual and legal issues. Criminal matters include felony preliminary examinations and misdemeanor trials, both of which often raise constitutional issues. Civil jurisdiction includes controversies over amounts up to $5,000; and the court is authorized to issue injunctions, appoint receivers, and exercise certain equity jurisdiction. (Code Civ. Proc., § 86.) Over the years this civil jurisdiction has expanded, both as to subject matter and dollar amount. Commencing July 1, 1979, the jurisdictional limit will go up to $15,000. (Stats. 1978, ch. 146, No. 2 Deering’s Adv. Legis. Service, p. 434.) Versatility and the highest order of legal skill are called for in the successful performance of many of these judicial duties. By way of contrast, the trial of traffic infraction cases calls for the talents of a person who understands the special societal function of traffic law enforcement, who is committed to its educational objective and who has the personal capability of dealing with people expeditiously, fairly, and in good spirit. The Legislature had valid reasons to conclude that the unique and specialized function of trying infraction cases was something which constituted a separate class of judicial service, which could properly be ranked as “subordinate” in relation to the diversity and complexity of the other duties of a municipal court judge.
One other consequence of traffic adjudication which is sometimes mentioned as enhancing the importance of such cases is that an insurance carrier may increase premium rates or refuse coverage for a driver *55 because of his record of traffic convictions. Since such a consequence depends upon the exercise of business judgment by private institutions, its impact is difficult for a court to evaluate. Regardless of what the collateral consequences of a traffic conviction may be, our concern should focus upon the accuracy of the adjudicatory system in determining which persons charged with violations are in fact violators. In the context of our present inquiry, the crucial question is whether the conviction of the innocent is more likely to occur in an infraction trial before a commissioner than before a judge. Nothing which has been brought to this court’s attention offers any basis for answering that question in the affirmative. On the contrary, there is good reason for the Legislature to have taken the view that a trial before a commissioner who had been designated especially to hear traffic cases would be at least as reliable as a trial before a municipal court judge whose interests and qualifications extended to a broader range of subjects. We must conclude that the possibility of increased insurance costs for convicted traffic offenders is not a factor which should weigh against the Legislature’s finding that the trial of traffic infractions may properly be conducted by commissioners.
The appellate department of the superior court reached its decision in these cases with the statement that In re Edgar M. (1975) 14 Cal.3d 727 [122 Cal.Rptr. 574, 537 P.2d 406] “is dispositive.” We therefore point out the vast difference we see between the issue here and that which was decided in the cited case.
Edgar M. deals with the role of a juvenile court referee who serves as a subordinate judicial officer in juvenile court cases. The Juvenile Court Law authorizes trials to be held before a referee, but subject to review by a judge. Former Welfare and Institutions Code section 558 (now § 252) provides that a judge may, after reading the transcript of the referee’s hearing, grant or deny an application for a rehearing. Rehearings, if granted, must be heard by a judge, and conducted de novo. (Former Welf. & Inst. Code, § 560, now § 254.)
Former section 558 also contains language added by a 1963 amendment requiring that the judge act upon the petition for rehearing within a specified time, and provides further that if the judge fails to act within the specified time limit, the application “shall be deemed denied.” The Edgar M. opinion held this last provision unconstitutional. The court reasoned *56 that giving finality to the referee’s decision without review and affirmation by a judge would, in effect, give to the referee judicial power not authorized by article VI, section 22, or any other provision of the state Constitution.
The difference between Edgar M. and this case is the difference between juvenile court and infraction trials. The juvenile court, exercising jurisdiction under Welfare and Institutions Code section 602, decides matters of grave importance to the minor, his family, and the community. The adjudication hearing determines whether a minor has committed the offense charged, and, if the charge is sustained, the minor becomes a ward of the court. The disposition order may take the minor from the custody of his parents and place him in a foster home or in an institution. The legal and factual issues to be resolved in these hearings include many of the serious and complex problems faced in felony trials. The exercise of the ultimate responsibility for such decisions could never be classified as a subordinate judicial duty.
The decision that a referee may not exercise the powers of a judge in a juvenile court case affords no analogy to adult traffic infraction trials.
We conclude that the Legislature did not exceed its powers in enacting the 1976 amendment to Government Code section 72190.
Each of the judgments is affirmed.
Kingsley, J., concurred.

The California Municipal and Justice Courts Manual, published by the California Center for Judicial Education and Research (1974) contains this overview of traffic court procedure:
“I. [§ 14.1] Traffic Procedure Distinguished
“It has long been recognized that, although traffic violations are classified as criminal offenses, they call for a different approach in processing from that in other criminal cases. The earliest comprehensive study of traffic court procedures throughout the United States noted the following distinctions from other criminal matters:
“(1) Usually a single issue is involved without question of degree or technicality;
“(2) The judge is given no extraneous or impartial testimony to aid his decision, particularly in nonaccident cases, but must decide whether the defendant’s story raises a reasonable doubt;
“(3) Although the traffic violator is technically a criminal, one accused of a minor violation will not respond to the treatment usually given lawbreakers in other fields;
“(4) Except for some accident cases, long and complicated trials are not required, and much more rapid adjudication of cases is possible than in any other criminal field;
“(5) Traffic law enforcement calls for uniform treatment over large geographic areas, and traffic courts must cooperate with the state motor vehicle administration to achieve uniform procedures and to make vital information readily available to that department. See Warren, Traffic Courts 33-34 (1944).

The statewide figures for the fiscal year 1976-1977 as reported in the January 1, 1978, Annual Report of the Judicial Council of California are:
*52 Type of case Filings Contests
Nonparking traffic infractions 4,356,682 73,882
Parking infractions 8,763,280 3,487
Traffic Misdemeanors 450,464 9,256
Nontraffic misdemeanors and infractions 583,708 10,964

In In re Dennis B. (1976) 18 Cal.3d 687, 695 [135 Cal.Rptr. 82, 557 P.2d 514], the Supreme Court had before it the question whether a conviction of an infraction operated as jeopardy barring prosecution for a felony arising out of the same prohibited act. The court’s opinion referred to “the state’s substantial interest in maintaining the summary nature of minor motor vehicle violation proceedings,” and said “Unconstrained by the more stringent procedural requirements of a major criminal trial, municipal courts and prosecutors are free to develop innovative procedures to expedite traffic cases.”

See discussion in Final Report of the Ad Hoc Task Force on Adjudication of the National Highway Safety Advisory Committee (June, 1973), attached as exhibit A to 2 California Department of Motor Vehicles: Administrative Adjudication of Traffic Offenses in California.