[Civ. No. 63633. Second Dist., Div. Seven. Mar. 30, 1984.]

SAMUEL REISMAN, Plaintiff and Respondent, v.
POLIN ZAREKEIVAN SHAHVERDIAN et al.,
Defendants and Appellants.

1078

COUNSEL

Allan F. Grossman for Defendants and Appellants.

R. William Shpall for Plaintiff and Respondent.

OPINION

SCHAUER, P. J.—Defendants appeal from a judgment confirming an arbitration award of attorney's fees and also appeal from subsequent orders denying a motion to vacate the judgment and disallowing a Code of Civil Procedure section 170.6 disqualification of the superior court commissioner who rendered the rulings. Inasmuch as defendants had not stipulated to the commissioner's acting as a temporary judge under the California Constitution, a principal issue is whether the defendants were "parties litigant." We resolve this issue against the defendants and affirm the judgment. We find, however, that the commissioner was not empowered to hear the subsequent

motion to vacate the judgment made pursuant to Code of Civil Procedure, section 473. We therefore remand the case so that this motion may be heard by a duly empowered judicial officer.

### Factual and Procedural History

Plaintiff is an attorney who provided legal services for defendants. The bulk of the legal services were rendered for defendant Polin Zarekeivan Shahverdian in connection with the dissolution of her 11-month marriage. The other two defendants, her father and brother, had joined with her in a written fee agreement calling for a "reasonable fee" for plaintiff.

Disappointed with the property division by the court in the dissolution proceeding, defendants refused to pay plaintiff's bill for his services. Thereupon, plaintiff instituted this action to recover attorney's fees.

Defendants then employed another law firm, Halperin and Halperin, and were represented by one of its members, Robert Kusior. By a September 10, 1979, letter agreement with plaintiff's counsel, Kusior accepted service of the summons and complaint and agreed to answer or seek arbitration within thirty days. Pursuant to article XIII, division 3, chapter 4 of the California Business and Professions Code, section 6200 et seq., providing for attorneys' fees arbitration which is optional for clients while mandatory for attorneys, defendants initiated arbitration with the Los Angeles County Bar Association. The defendants' petition for arbitration contains an agreement by defendants "to enter into binding arbitration." The petition form, just before it provides for the election for or against binding arbitration, states: "If you and the attorney both agree to make the arbitration binding, *No appeal or further proceedings will be possible after the arbitration award is made.*" In addition to the petition for arbitration, defendants also signed a "request for arbitration and stay of proceedings" which, inter alia, contained the following:

"*Effect of Arbitration*:

"Arbitration pursuant to Article 13 of the Business and Professions Code is called *ADVISORY ARBITRATION* meaning that:

"If either you or the attorney are not satisfied with the award of the arbitrator(s) you have the right to petition the court for a new hearing within 30 days of the mailing of the notice of award.

"However, you and the attorney may agree to make the arbitration *binding,* which means that once the arbitrators have rendered an award, no appeal or further proceeding will be possible.

"Choice: (Check one)

"I desire *Advisory Arbitration.* ☐

"I agree to *Binding Arbitration.* ☒"

Neither the request for arbitration and stay of proceedings nor any form of order to stay the proceedings was delivered to the court. Thus, the court never issued a stay. Nonetheless, plaintiff also signed a written agreement of submission to binding arbitration and there were no further judicial proceedings on the complaint for attorney's fees which initiated this action. Hence, defendants filed no answer or other pleading in response to plaintiff's complaint.

Defendants, however, did pay their first appearance filing fee in order to appear *specially* to make a June 1979 motion to quash an alleged service upon them by plaintiff. This motion was successful but only of temporary effect since thereafter counsel for plaintiff and Kusior entered into the letter agreement of September 10, 1979, through which defendants agreed to accept service.

Defendants also paid a filing fee to the Los Angeles County Bar Association for the arbitration. The arbitration hearing before three arbitrators continued for two days with all parties and their counsel fully participating therein, giving testimony and presenting documentary evidence.

On January 12, 1981, the arbitrators rendered their award, including findings of fact and conclusions. The award gave plaintiff the full amount of his claim against defendants.

Plaintiff then filed, on February 19, 1981, a petition to confirm the arbitration award and have it made a judgment of the superior court. The hearing on the petition was noticed for March 9, 1981.

In the meantime, upon receiving the unfavorable arbitration result, Kusior by letters of February 5, 1981, and February 11, 1981, advised defendants that he did ". . . not presently have any grounds for overturning the award" and that they had only 14 days after service of notice of the award to "seek to overturn the awards," namely, until February 16, 1981. When defendants received these letters, they advised Kusior that his firm should do nothing further in the action, that another attorney, Stuart D. Myers, would be handling the case and that Kusior should transmit his file to Myers. Under cover of a letter of February 12, 1981, Kusior did send the file to Myers along with a substitution of attorneys signed for the Halperin firm. Myers

reviewed the matter and advised defendants that they should rely upon Kusior's opinion ". . . that there was nothing that could be done about vacating the arbitration award or appealing to a higher court." Kusior received no communication that the substitution of attorneys had been signed by defendants or Myers and on February 20, 1981, filed and served a notice of motion by the Halperin firm ". . . to withdraw as attorney of record." The hearing on the motion to withdraw was set for March 9, 1981, the same time at which the petition to confirm had been set.

Defendants concede receiving due notice of the March 9 proceedings but they did not appear at the March 9 hearings. They submitted no written response or opposition to either the petition to confirm or the motion to withdraw although they admit receiving adequate notice thereof. Moreover, defendants did not employ a new attorney to appear at the March 9 hearings or to respond in any fashion to the proceedings then pending.

The petition to confirm and motion to withdraw were transferred from Superior Court Department 83 as overflow matters to Commissioner Arnold Levin in Department 66. The Department 66 minute order of March 9, 1981, recites: "It Is STIPULATED that Commissioner Arnold Levin may hear this matter as Judge Pro Tem."

At the March 9 hearings, the commissioner granted the Halperin firm's motion to withdraw, "effective on giving notice . . . [to defendants] . . . and on filing proof of service of the same with the Court . . . ." and also granted the petition to confirm and for entry of judgment on the arbitration award. On March 10, 1981, the proof of service upon defendants of notice of the withdrawal was filed with the court by the Halperin firm.

By March 24, 1981, defendants had employed another attorney, Allan F. Grossman, who made and filed a "special appearance to question personal jurisdiction." This application was made ex parte to Commissioner Levin who denied it the same day.

Also on March 24, 1981, Commissioner Levin signed the judgment confirming the arbitration award, and on March 30, 1981, the judgment was entered by the clerk. On March 31, 1981, notice of entry of the judgment was given by both the clerk's office and plaintiff.

On April 1 and again on April 2, 1981, defendants' new counsel, Mr. Grossman, made special appearances to contest the court's personal jurisdiction over defendants, asserting that the Halperin firm was not authorized to accept service for defendants and Kusior had no authority to so agree in the letter of September 10, 1979. Defendants also alleged the falsity of

declarations of plaintiff's process server and contended that they had not made a general appearance in the judicial proceedings by participating in the attorney's fees dispute arbitration pursuant to the procedures authorized by the California Business and Professions Code. Defendants' motion to vacate the March 30, 1981 judgment for lack of personal jurisdiction was heard, with oral testimony taken on three days, by Judge Thomas T. Johnson. On April 22, 1981, Judge Johnson denied the motion and notice of the ruling was under date of April 28, 1981.

The next event in the procedural history of this case occurred on June 17, 1981, when defendants filed a notice of motion under Code of Civil Procedure section 473 to vacate the judgment of March 30, 1981. The grounds asserted by defendants in the Code of Civil Procedure section 473 motion involved the misconduct of the Halperin firm and Kusior who, defendants alleged, rendered them faulty legal advice and then withdrew from the case before the March 9 hearing on the petition to confirm.

The section 473 motion was noticed for hearing on July 6, 1981, in department 83 before Judge Dickran M. Tevrizian, Jr. On July 6, 1981, Judge Tevrizian continued the hearing to August 3, 1981, and transferred it to be heard before Commissioner Levin in department 66. Judge Tevrizian's minute order of July 6 made reference to the "Matter having been previously ruled upon by Commissioner Levin." On August 3, 1981, defendants refused to stipulate to a commissioner and the matter was transferred back to Judge Tevrizian and continued for a week.

On August 10, 1981, Judge Tevrizian again transferred the matter to Commissioner Levin with a minute order reciting that "Judge Pro Tem Levin must decide whether or not to reconsider his previous rulings as they are the law of this case. No stipulation is necessary to hearing the pending motions." Commissioner Levin then ruled that at the time of the March 30 judgment defendants had made no general appearance in the action and were not "parties litigant," thus obviating any requirement for their stipulating to a commissioner.

Thereupon, defendants' counsel presented a Code of Civil Procedure section 170.6 declaration of prejudice to disqualify Commissioner Levin. The commissioner again transferred the matter to Judge Tevrizian, who on the same day, August 10, retransferred it to Commissioner Levin on the basis that the Code of Civil Procedure section 170.6 declaration had been "untimely filed." The hearing on the section 473 motion was continued to August 12, 1981, on which date Commissioner Levin "rejected" the section 170.6 disqualification because the section 473 motion was "in the nature of

a motion for reconsideration or . . . for a new trial, and therefore the judicial officer who ordered the judgment entered has to hear it."

After disallowing the section 170.6 application on August 12, 1981, Commissioner Levin denied defendants' section 473 motion to vacate and for leave to file a proposed response to plaintiff's petition for confirmation of the arbitration award and for rehearing of arbitration.

Defendants appeal from such orders denying the section 473 motion and disallowing the section 170.6 challenge. They also appeal from the judgment entered March 30, 1981. They do not appeal from the ruling of April 22, 1981, denying their motion to vacate the March 30 judgment for lack of personal jurisdiction and, citing Code of Civil Procedure section 1293,[1] they expressly concede that the court had personal jurisdiction over them.

To avoid repetition, other facts relevant to specific issues are presented as those issues are framed and discussed hereafter.

1. *Should the appeal from the March 30 judgment be dismissed as untimely?*

 We answer in the affirmative but view it as inconsequential to defendants' contentions.

Notice of entry of the March 30, 1981, judgment was mailed on March 31, 1981. The notice of appeal was not filed until August 14, 1981, considerably beyond the sixty days from notice of entry of judgment which is the normal time period provided by California Rules of Court, rule 2(a).

 Moreover, the time for filing the notice of appeal was not extended to 30 days after entry of the order denying the section 473 motion to vacate the judgment because for such extension under California Rules of Court, rule 3(b)[2] the notice of motion to vacate must be—but here was not—filed

---

[1]Code of Civil Procedure section 1293 provides: "The making of an agreement in this State providing for arbitration to be had within this State shall be deemed a consent of the parties thereto to the jurisdiction of the courts of this State to enforce such agreement by the making of any orders provided for in this title and by entering of judgment on an award under the agreement."

[2]California Rules of Court, rule 3(b) provides: "When a valid notice of intention to move to vacate a judgment or to vacate a judgment and enter another and different judgment is served and filed by any party on any ground within the time in which, under rule 2, a notice of appeal may be filed, or such shorter time as may be prescribed by statute, the time for filing the notice of appeal from the judgment is extended for all parties until the earliest of 30 days after entry of the order denying the motion to vacate; or 90 days after filing the first notice of intention to move to vacate the judgment; or 180 days after entry of the judgment."

". . . within the time in which, under rule 2, a notice of appeal may be filed . . . ." The notice of motion to vacate under section 473 was not filed until June 17, 1981, more than 60 days after the March 31 mailing of notice of entry of judgment. Thus, since the section 473 motion to vacate was not filed within the time required by rule 3(b), there was no extension beyond the normal rule 2(a) 60 days for filing notice of appeal from the March 30 judgment. ■ Unless the April motion to vacate for lack of personal jurisdiction was effective to extend the time to appeal, the jurisdictional period for appeal has expired and the appeal from the March 30 judgment must be dismissed. (*Hollister Convalescent Hosp., Inc.* v. *Rico* (1975) 15 Cal.3d 660 [125 Cal.Rptr. 757, 542 P.2d 1349].)

The April motion to vacate the March 30 judgment for lack of personal jurisdiction was filed well within the 60-day period, but the order of denial was entered in the minutes on April 22, 1981, thus providing an extension under rule 3(b) only for 30 days thereafter, until May 22, 1981, which is still within the 60-day period from March 31 and yet before the June 17 filing of the section 473 motion to vacate. Consequently, the April motion to vacate does not assist defendants in obtaining additional time in which to appeal from the March 30 judgment.

■ Dismissal of the appeal from the March 30 judgment does not foreclose defendants from presenting the one ground they assert on the appeal from that judgment, namely, that Commissioner Levin's judicial act was void because he had no judicial power in the absence of defendants' stipulation. Such a challenge to the March 30 judgment goes to the essence of the trial court's jurisdiction and necessarily is preserved for our consideration on review of the section 473 motion to vacate that allegedly void judgment. We reach this conclusion because, if defendants are correct, the March 30 judgment was a nullity which may be set aside at any time through any appropriate judicial vehicle.[3] (*People* v. *Tijerina* (1969) 1 Cal.3d 41, 48-49 [81 Cal.Rptr. 264, 459 P.2d 680]; *Lovret* v. *Seyfarth* (1972) 22 Cal.App.3d 841, 852-857 [101 Cal.Rptr. 143]; *Cadenasso* v. *Bank of Italy* (1932) 214 Cal. 562, 567-568 [6 P.2d 944].)

■ ■ Thus we shall dismiss the untimely appeal from the March 30 judgment but in considering the timely appeal from the section 473 motion we will determine whether the judgment attacked by the section 473 motion on other grounds in the trial court was void because rendered by an officer without judicial power.

---

[3]Appeal of the denial of a section 473 motion is an appropriate such vehicle. Such a denial has been held to be appealable under section 904.1, subdivision (b). (*Martin* v. *Johnson* (1979) 88 Cal.App.3d 595, 602 [151 Cal.Rptr. 816].)

2. *Should the entire appeal be dismissed because of defendants' written agreement to binding arbitration and waiver of appeal?*

 We answer in the negative. Although the Los Angeles County Bar Association forms recite that upon agreement to binding arbitration "no appeal or further proceedings" after the award are "possible," we do not take such language in the strict sense because it could not have been so intended. It is obvious that plaintiff did not so understand the agreement because he undertook "further proceedings" under Code of Civil Procedure section 1285 to confirm the arbitration award and have judgment entered thereon.

We conclude that the waiver agreements here are directed against a party seeking a trial de novo and against any appeal directly from the award and within the arbitration proceeding itself as distinguished from an appeal of judicial action on the award.

Our view in this regard is supported by an analysis of the relevant California Business and Professions Code provisions. Business and Professions Code section 6204, subdivision (a) recites that the parties to an attorney fee dispute arbitration ". . . may agree in writing to be bound by the award . . .," and that either party may obtain a trial de novo in the absence of such an agreement to binding arbitration. Business and Professions Code section 6203, subdivision (b) provides that, unless a trial de novo is sought, an arbitration award ". . . may be confirmed, corrected, or vacated by petition to the court in the same manner as with arbitration awards generally, as provided in Chapter 4 (commencing with Section 1285) of Title 9 of Part 3 of the Code of Civil Procedure." Thus, the Code of Civil Procedure section 1285 et seq. trial court procedures are made expressly available in attorneys' fees arbitration cases. As to waiver of judicial appellate review of the results of such procedures, there is neither statutory authorization therefor nor language in the form waiver agreements which expressly applies to such judicial action.

 An appellate system for review of judicial error is provided by the California Constitution, article VI, sections 2-4. However, the right to appeal is statutory, not constitutional, and may be waived by an agreement ". . . made upon a valid and legal consideration . . . ." (*Estate of Hart* (1962) 204 Cal.App.2d 634, 637 [22 Cal.Rptr. 495].) The waiver of such a right of access to judicial review should be clear and express. (See *Keroff v. Snyder* (1962) 208 Cal.App.2d 429, 431-432 [25 Cal.Rptr. 234].) Here it seems uncertain whether parties checking the box form for binding arbitration would understand that they were waiving "appeal" which included review of judicial action regarding an award as distinguished from

the actions of the arbitrators. Without greater specificity in the waiver agreement language, we hold it was not effective to waive rights to appeal trial court judicial action which was expressly provided for by Business and Professions Code section 6203, subdivision (b).

We thus agree with appellants' contention that their waivers of "appeal" do not extend to the trial court's March 30 judgment and subsequent orders concerning its consideration of that judgment. Although we will dismiss the appeal from the March 30, 1981, judgment as untimely, we do not dismiss the appeal from the August 1981 orders.

3. *Was the commissioner empowered to act as a temporary judge in the absence of defendants' stipulation?*

We answer in the affirmative based on two legal theories and policy considerations.

(a) *Defendants were not parties litigant in the March 9 action.*

██ Defendants' primary contention is that Commissioner Levin was not empowered to act as a temporary judge at the March 9 hearing. ██ A commissioner is empowered as temporary judge "[o]n stipulation of the parties litigant." (Cal. Const., art. VI, § 21; Code Civ. Proc., § 259, subd. (5).)[4] ██ In the case at bench, plaintiff stipulated to Levin's presiding as temporary judge at the March 9 hearing, but defendants, who were not present, did not. Resolution of this contention thus turns upon the definition of the phrase "parties litigant."

██ It has repeatedly been held that the term " 'parties litigant' means the parties who are taking part in the litigation,—those who have appeared therein." (*Estate of Kent* (1936) 6 Cal.2d 154, 162 [57 P.2d 901].) ██ A party who has notice of a proceeding but fails to appear or otherwise take part loses the status of party litigant. (*Sarracino v. Superior Court* (1974) 13 Cal.3d 1, 6-8 [118 Cal.Rptr. 21, 529 P.2d 53].) The parties who do appear and take part may thus stipulate to the appointment of a temporary judge without the consent of the absent, nonlitigating parties. (*Id.,* at p. 10.) In *Sarracino,* a defendant failed to appear at a hearing on applications for temporary support in a proceeding for dissolution of marriage and child support. The court held that the defendant's action was "indistinguishable" from default, and that the stipulation of the parties who did appear at that

---

[4]Article VI, section 21 provides, in its entirety: "On stipulation of the parties litigant the court may order a cause to be tried by a temporary judge who is a member of the State Bar, sworn and empowered to act until final determination of the cause."

proceeding was therefore sufficient to empower the commissioner as a temporary judge. (*Id.* at p. 10.) The case at bench presents just such a situation comparable to default, and thus falls squarely under the rule enunciated in *Sarracino.*

With regard to the March 9 hearing, defendants took no action which remotely suggested the status of a party litigant; their actions, or, more accurately, their complete inaction, suggested precisely the opposite. Defendants failed to file any response to the petition for confirmation, they failed to appear at the hearing; they instructed their attorney to give up the file in the case but made no arrangements for their successor attorney, who had examined the file, to appear at the hearing. The only appearance made at the hearing was by Halperin and Halperin, on their motion to withdraw. This motion sought relief against defendants; it in no way suggested defendants' desire to litigate. To the contrary, defendants' absence from the courtroom in spite of knowledge of this motion suggested that they had no such desire. Defendants' reaction to this motion is symptomatic of their complete inaction with respect to the March 9 hearing; this inaction compels our conclusion that defendants were not parties litigant at that proceeding.

(b) *Defendants were never parties litigant before the March proceedings.*

We realize, however, that it is possible to take a broader view of the cause or proceeding relevant in determining party litigant status. Arguably, this cause or proceeding began with the filing of the underlying lawsuit by plaintiff in 1979. However, even if we step back to the inception of this controversy, we are unable to find a single act of litigation on the part of defendants. Defendants never made a general appearance in the underlying matter; they appeared once, specially, in a motion to quash plaintiff's alleged service on them. Such an appearance gave the court no general jurisdiction over defendants (1 Witkin, Cal. Procedure (2d ed. 1970) § 124, p. 653), nor did jurisdiction arise from defendants' payment of the relevant filing fee (*Josephson* v. *Superior Court* (1963) 219 Cal.App.2d 354, 362-363 fn. 4 [33 Cal.Rptr. 196]); both these actions indicated defendants' desire *not* to become parties litigant. Finally, defendants never filed an answer to the complaint in the underlying action, nor did they ever lodge their petition for arbitration and stay with the court. The record in this action, then, is devoid of any acts of litigation taken by defendants before the trial court at any time after plaintiff's complaint was filed. For this reason that court was correct in concluding that defendants were not parties litigant and that their stipulation was not required to empower a commissioner as a temporary judge.

(c) *Participation in the arbitration proceedings did not confer party litigant status on defendants.*

Defendants urge, however, that by acquiescing to and participating in the arbitration proceedings they became parties litigant. We disagree. We have found no authority indicating that the status of a party litigant can be achieved by an election to arbitrate. This absence is logical. The constitutional provision quoted above empowers a temporary judge to try a "cause" on stipulation of the parties litigant. (Cal. Const., art. VI, § 21.) Subsequent decisions have made it clear that the "cause" is "the proceeding before the court" (*Sarracino* v. *Superior Court, supra,* 13 Cal.3d 1 at p. 9) and that the parties litigant are "those parties [who are] before the court" (*In re Plotkin* (1976) 54 Cal.App.3d 1014, 1017 [127 Cal.Rptr. 190]). The arbitration proceedings here were not carried out before the court; they were not initiated on any order of the court, nor was any supervision of the court sought or provided until the petition to confirm was filed by plaintiff. The court proceedings, in fact, ceased pending outcome of the independent and extrajudicial arbitration hearing. Under the standard set forth in *Sarracino* and *Plotkin, supra,* then, participation in the arbitration hearing did not involve any action before the court sufficient to grant the status of parties litigant to defendants.

Our Supreme Court has noted that consensual arbitration involves a forum "alternative to, and independent of, the judicial . . . ." (*Madden* v. *Kaiser Foundation Hospitals* (1976) 17 Cal.3d 699, 714 [131 Cal.Rptr. 882, 552 P.2d 1178].) We believe this conclusion applies as well to arbitration elected by the client under Business and Professions Code, section 6200. The purpose of arbitration is to provide a nonjudicial alternative to dispute resolution. This nonjudicial nature is retained whether the arbitration occurs before a lawsuit is filed, as in *Madden, supra,* or whether, as here, a lawsuit is stayed, or ceased, so that arbitration can be had.

(d) *Assuming defendants attained party litigant status, they lost it by virtue of their failure to appear at the March 9 hearing.*

Finally, we assume for the sake of argument that defendants achieved party litigant status at some point before or during the arbitration of their dispute. This presumed status does not survive defendants' inaction in response to plaintiff's petition for confirmation of arbitration. As set forth above, defendants failed to file a response to the petition, as permitted by Code of Civil Procedure, section 1285.2; more importantly, they failed to appear at the March 9 hearing on this motion, despite receiving adequate notice of this hearing.

 Party litigant status can be lost by a party who fails to appear at trial despite receipt of proper notice. (*Lint* v. *Chisholm* (1981) 121 Cal.App.3d 615, 621-622 [177 Cal.Rptr. 314].) In *Chisholm,* the defendant was a party litigant throughout the pretrial proceedings, but failed to appear after receiving notice of trial. The court there held: " 'The phrase "parties litigant . . ." does not include parties . . . who willfully remain away from the trial . . . . [T]here is no injustice [in such a case] in ruling that they waived their rights to object to the appointment of . . . a judge pro tempore. . . .' " (*Id.* at pp. 621-622, quoting *Bill Benson Motors* v. *Macmorris Sales Corp.* (1965) 238 Cal.App.2d Supp. 937, 944 [48 Cal.Rptr. 123].) The situation here is analogous. The March 9 hearing was the proceeding mandated by the Code of Civil Procedure for judicial enforcement of an arbitration award and was thus analogous to the trial in *Chisholm.* In failing to appear at this duly noticed hearing, defendants waived their right to object to the appointment of a temporary judge.

(e) *Constitutional and policy considerations*

Finally, we note that policy reasons compel this conclusion. We are mindful of the criticisms lodged against the wholesale use of commissioners as temporary judges. Indeed, in our view such extensive use of commissioners in essentially judicial positions masks the true needs of the judiciary and is unwise. We concede, however, that such use of commissioners as temporary judges, however unwise, is wholly legal and constitutional. This practice is specifically authorized by article VI, section 21 of our state's Constitution, quoted above, which allows any attorney to serve as a temporary judge on stipulation of the parties litigant. If it is constitutionally permissible for *any* attorney to be empowered as a temporary judge, then, a fortiori, it is permissible for a commissioner—an attorney who has undergone a strenuous selection process—to so act. Furthermore, the fact that these commissioners are permanent employees of the courts does no violence to the constitutional concept of a "temporary judge." The word temporary, as used in this context, does not speak to the employment status or frequency of appointment of the temporary judge vis-à-vis the employing court. Instead, it indicates that the temporary judge becomes a judge only on stipulation of the parties litigant and remains a judge only until the stipulated cause is determined. In this regard we see no qualitative difference between the habitual use of one commissioner as a temporary judge in each of California's 54 counties, and the use of 54 such commissioners as temporary judges in a county such as Los Angeles. Either such use is constitutional, so long as the judge's power vis-à-vis the litigants remains temporary.

California courts, including this division, have been zealous in enforcing the *temporary* nature of these judges' powers. (See, e.g., *In re Marriage of*

*Galis* (1983) 149 Cal.App.3d 147 [196 Cal.Rptr. 659] (commissioner could not hear divorce proceeding as referee, after parties refused to stipulate to him as temporary judge); *Yetenekian* v. *Superior Court* (1983) 140 Cal.App.3d 361 [189 Cal.Rptr. 458] (commissioner not empowered when party refused to stipulate); *Nierenberg* v. *Superior Court* (1976) 59 Cal.App.3d 611 [130 Cal.Rptr. 847] (stipulated "cause" does not include subsequent contempt proceedings); *In re Plotkin* (1976) 54 Cal.App.3d 1014 [127 Cal.Rptr. 190] (stipulated cause does not include proceedings re contempt of witness).) California courts, however, have also recognized the valuable services which commissioners perform as temporary judges. (See *In re Marriage of Galis, supra,* 149 Cal.App.3d 147, 154.) Like the court in *Chisholm, supra,* 121 Cal.App.3d 615, we do not believe that these valuable services should go for naught when, as in the case at bench, the actions of a commissioner, legally empowered as a temporary judge, are attacked by a party who uses his willful absence from a proceeding as a technicality with which to challenge the power of that temporary judge. This policy reason, as well as the legal reasons enumerated above, compels our conclusion that Commissioner Levin was properly empowered to act as a temporary judge at the March 9 hearing.

4. *Was determination of the March 9 proceeding a subordinate judicial duty, within the power of a commissioner?*

We answer in the affirmative and thus find additional and alternative grounds to support the commissioner's power to determine the March 9 hearing. We conclude that this hearing was an uncontested action or proceeding by virtue of defendants' failure to answer or appear. Accordingly, Commissioner Levin was empowered to determine this action under Code of Civil Procedure section 259, subdivision (7), which implements California Constitution article VI, section 22. Article VI, section 22 of the California Constitution states: "The Legislature may provide for the appointment by trial courts of record of officers such as commissioners to perform subordinate judicial duties." Pursuant to this section, the legislature has enacted Code of Civil Procedure section 259, subdivision (7) which grants commissioners the power to "[h]ear, report on, and determine all uncontested actions and proceedings other than actions for divorce, maintenance, or annulment of marriage."

"An action or proceeding is uncontested [pursuant to § 259] when no answer or opposition is filed." (*E.N.W.* v. *Michael W.* (1983) 149 Cal.App.3d 896, 899 [198 Cal.Rptr. 355], citing *Rooney* v. *Vermont Investment Corp.* (1973) 10 Cal.3d 351, 367 [110 Cal.Rptr. 353, 515 P.2d 297].) In the case at bench no answer or opposition was filed to the March 9 petition for confirmation of arbitration award. Under section

259, subdivision (7), then, Commissioner Levin had the power to determine this proceeding.

■ In hearing uncontested actions and proceedings, commissioners have the power to determine important and complex matters. (*People* v. *Lucas* (1978) 82 Cal.App.3d 47, 50 [147 Cal.Rptr. 235]; *West* v. *U. L. C. Corp.* (1965) 232 Cal.App.2d 85 [42 Cal.Rptr. 603].) There has, however, been some suggestion that there are rights so fundamental that their determination can never be considered a subordinate judicial duty, even in an uncontested proceeding. (See *E.N.W.* v. *Michael W., supra,* 149 Cal.App.3d at p. 899 (assuming, arguendo, that paternity is such a matter); *Salas* v. *Cortez* (1979) 24 Cal.3d 22, 27-29 [154 Cal.Rptr. 529, 593 P.2d 226].) ■ The case at bench, however, does not involve any such fundamental right; it involves, in contrast, an uncontested petition to confirm the binding arbitration of an attorney's fees dispute. Such an uncontested petition was properly heard and determined by Commissioner Levin.

*5. Did Commissioner Levin have power, as a temporary judge, to hear the section 473 motion to vacate his judgment?*

■ Defendants' section 473 motion was contested; determination of this motion was therefore not a subordinate judicial duty, within Levin's powers as a commissioner pursuant to Code of Civil Procedure section 259, subdivision (7). There is, however, some question as to whether determination of this motion was included in Commissioner Levin's powers as a temporary judge.

Based on the circumstances present in this case, we conclude that Commissioner Levin's power as a temporary judge did not extend to this section 473 motion; we therefore remand the case so that this motion may be heard by a duly empowered judicial officer.

(a) *Under normal circumstances, a temporary judge is empowered to determine subsequent motions for relief from his or her judgment.*

Defendants attack Commissioner Levin's power to hear their Code of Civil Procedure, section 473 motion for relief from the March 30 judgment. This motion was called for hearing on August 3, 10 and 12 of 1981; on each of these dates defendants refused to stipulate to Commissioner Levin. Defendants contend that, absent their stipulation, Levin was not empowered to act as a temporary judge to hear their section 473 motions, and that his denial of this motion is therefore void.

■ Article VI, section 21 of the California Constitution provides that a temporary judge is empowered to act "until final determination of the

cause." Several cases have dealt with this language in determining whether the power of a temporary judge continues, enabling that judge to determine subsequent proceedings, such as the section 473 motion at issue here.

In resolving this question, the case law distinguishes between two types of proceedings. On the one hand are proceedings which are termed "ancillary." These are proceedings "heard and determined upon a record of [their] own . . . [proceedings for] a separate judgment independent of the final judgment in the underlying proceeding." (*Nierenberg* v. *Superior Court, supra,* 59 Cal.App.3d 611 at p. 618; *Sarracino, supra,* 13 Cal.3d 1, 9.) Typical of an ancillary proceeding is a hearing on contempt (*Nierenberg, supra*; *In re Plotkin, supra,* 54 Cal.App.3d 1014); the parties to such a hearing differ from those to the underlying action and the judgment of contempt is independent of any judgment rendered in the earlier action.

Ancillary proceedings are not a continuation of the stipulated cause, and the temporary judge has no power to hear them absent a new stipulation.

To be contrasted with ancillary proceedings are proceedings which are a part or continuation of the stipulated cause, or which question the finality of the temporary judge's determination of that cause. The stipulation empowering the temporary judge to determine a given cause also empowers that judge to determine such direct progeny of that cause. (*Anderson* v. *Bledsoe* (1934) 139 Cal.App. 650 [34 P.2d 760].)

In *Anderson* v. *Bledsoe, supra,* a temporary judge, acting on the stipulation of the parties litigant, heard a case, rendered a judgment and thereafter granted a motion for a new trial. The period in which this new trial order could be appealed elapsed. A motion to vacate the new trial order was then made, apparently pursuant to section 473, and assigned to the same temporary judge. The plaintiff sought a writ to prevent this judge from hearing the motion to vacate. The appellate court denied the writ, holding that "[t]he authority of the appointment continues until the final disposition of the case," and that the temporary judge thus had the power to hear the motion to vacate his order for new trial. (*Id.,* at p. 651.)

The motion to vacate at issue here falls within the same category as the one described in *Anderson.* True, this motion raises a somewhat different question from the one considered at the March 9 hearing, specifically, whether defendants' absence from that hearing was excusable. However, the fact that these specific questions differ does not render the section 473 motion an ancillary proceeding. On the contrary, defendants' section 473 motion was a direct continuation of the March 9 proceeding. The motion sought no separate judgment independent of the one announced on

March 9, rather, it constituted a direct attack on that judgment. In fact, as in *Anderson,* the section 473 motion here was the only obstacle preventing the earlier judgment from becoming final. ██ ██ ██ ██ Accordingly, under normal circumstances a temporary judge, empowered by stipulation of the parties to act until final determination of the case, would have been empowered to determine the section 473 motion.[5]

(b) *Under the circumstances present here, defendants obtained the right to stipulate, or to refuse to stipulate, to Commissioner Levin's power to hear their section 473 motion.*

 We note, however, that the decision in *Anderson* addresses only the situation where both parties have actually stipulated to the power of the temporary judge. By so stipulating, the parties contemplate that this judge will have jurisdiction until final determination of the cause; they therefore may be presumed to have acceded to this judge's authority to determine any subsequent requests for reconsideration of his or her ruling.

A very different situation exists here, where the temporary judge's power arises from one party's failure to appear. Under these circumstances there is no actual stipulation by which the absent party expresses a willingness to have the temporary judge act until a final determination is reached.

Nor is there any basis to infer such a stipulation from a party's absence at the original hearing. True, *Sarracino, supra,* 13 Cal.3d 1, provides that this absence may empower the temporary judge to hear the original proceeding. We find no hint in *Sarracino,* however, that the authority of a temporary judge, empowered due to such an absence, extends to *subsequent* proceedings at which the formerly absent party appears and objects. 
On the contrary, we are mindful that precedent requires us to construe the power of temporary judges narrowly, so as to enforce the temporary nature of that power. (See, e.g., *In re Galis, supra,* 149 Cal.App.3d 147; *Yetenekian* v. *Superior Court, supra,* 140 Cal.App.3d 361.) Accordingly, we construe the rule in *Sarracino* narrowly; we find that this rule gives way to the constitutional provision that a temporary judge act only "[o]n stipulation of the parties litigant." (Cal. Const., art. VI, § 21, *supra.*) We therefore conclude that when a formerly absent party appears at a subsequent proceeding, that party becomes a party litigant and gains the right to

---

[5]Sound judicial policy requires that section 473 motions for relief from a judgment be heard by the same judge who made the challenged judgment. (*Jacobs* v. *Superior Court* (1959) 53 Cal.2d 187, 191 [1 Cal.Rptr. 9, 347 P.2d 9]; *Muller* v. *Tanner* (1969) 2 Cal.App.3d 445, 463 [82 Cal.Rptr. 738].) There is, however, no requirement that the same temporary judge who makes a judgment *must* hear these subsequent motions; such subsequent motions may, of course, be assigned to another duly empowered judge.

stipulate to the temporary judge's power. Refusal to so stipulate deprives the temporary judge of power to hear the new but related proceeding.

This was the situation in the case at bench. Defendants' absence at the March 9 hearing gave rise to Levin's power to determine that hearing. However, in appearing on their section 473 motion, defendants became parties litigant and won the right to stipulate, or to refuse to stipulate, to Commissioner Levin's power to hear that motion. Since they refused to so stipulate, Commissioner Levin was not empowered to hear the motion; his orders made pursuant to the motion are therefore void.

### Summary

In summary, then, we find that Commissioner Levin was duly empowered to determine the March 9 hearing. Accordingly, since his determination of that hearing was not void, the untimely appeal from the March 30 judgment is dismissed.

Due to the circumstances present here, however, defendants' stipulation was required to empower Commissioner Levin to hear the subsequent section 473 motion. Since no such stipulation was obtained, the denial of that motion is void and the case must be remanded so that such motion may be heard before a duly empowered judicial officer.

In light of this disposition, defendants' motion to disqualify Commissioner Levin pursuant to Code of Civil Procedure section 170.6 is moot.

### Disposition

The appeal from the judgment is dismissed. The order made pursuant to defendants' motion under Code of Civil Procedure, section 473 is reversed and the case is remanded so that such motion may be heard before a duly empowered judicial officer.

Thompson, J., and Johnson, J., concurred.

A petition for a rehearing was denied April 18, 1984, and respondent's petition for a hearing by the Supreme Court was denied May 30, 1984.