Filed 7/22/14

*CERTIFIED FOR PUBLICATION*

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| ROMAN LUCKEY, | B253892 |
| Petitioner, | (Los Angeles County Super. Ct. No. BC508484) |
| v. | |
| SUPERIOR COURT OF THE STATE OF CALIFORNIA, COUNTY OF LOS ANGELES, | |
| Respondent; | |
| COTTON ON USA, INC. et al., | |
| Real Parties in Interest. | |

ORIGINAL PROCEEDINGS in mandate.  Daniel J. Buckley and Lee Smalley Edmon, Judges.  Petition denied.

Wucetich & Korovilas, Jason M. Wucetich and Dimitrios V. Korovilas for Petitioners.

Sedgwick and Douglas J. Collodel for Respondent.

Kelley Drye & Warren and Edward E. Weiman for Real Parties in Interest.

Petitioner Roman Luckey brought a putative class action against real parties in interest Cotton On USA, Inc. and Cotton On Clothing Pty Ltd. (collectively Cotton On) for violations of the federal Fair and Accurate Credit Transactions Act (FACTA). Prior to class certification, Luckey and Cotton On mediated their dispute and reached a class settlement agreement. Pursuant to the settlement agreement, Luckey and Cotton On stipulated to the appointment of a temporary judge for the purpose of ruling on the motions for preliminary and final approval of the settlement. This stipulation was presented to respondent Superior Court of California, County of Los Angeles (Superior Court), which declined to appoint the temporary judge, on the basis that counsel for Luckey had no authority to sign the stipulation on behalf of the absent putative class members. Luckey filed a petition for writ of mandate, challenging this ruling. We conclude that the California Constitution, the California Rules of Court, and public policy concerns all preclude the appointment of a temporary judge for purposes of approving the settlement of a pre-certification class action. When the class has not yet been certified, the putative class representative has no authority to consent to a temporary judge on behalf of the absent putative class members.[1] We therefore deny the writ petition.

---

[1] This is not to say that, following class certification, the class representative has authority to consent to a temporary judge on behalf of absent class members. That issue is not before this court, and we express no opinion on it. (See also, fns. 16 and 23, *post*.)

### FACTUAL AND PROCEDURAL BACKGROUND

1. *Allegations of the Complaint*

On May 5, 2013, Luckey filed the instant action in Superior Court; the operative complaint is the first amended complaint, filed September 5, 2013. Under FACTA, it is prohibited for a person accepting credit or debit cards for the transaction of business to print "more than the last 5 digits of the card number or the expiration date" on an electronically printed receipt provided to the cardholder at the point of the transaction. (15 U.S.C. § 1681c(g).) Any person who willfully fails to comply with this requirement is liable to the consumer for actual damages of not less than $100 and not more than $1,000, as well as punitive damages and reasonable attorney's fees. (15 U.S.C. § 1681n(a)(1).) Luckey alleged that, on April 18, 2013, he made a credit card purchase at a Cotton On store, and received an electronically printed receipt that showed the first four and last four digits of his credit card number as well as the card's expiration date. Luckey alleged, on information and belief, that Cotton On's stores across the county similarly electronically print eight digits of purchasers' credit card numbers and expiration dates upon their receipts. Luckey alleged that Cotton On knew or should have known of the FACTA requirements. The operative complaint alleged causes of action for violation of FACTA, negligence, and declaratory relief.

Luckey sought to proceed in a class action, defining the putative class as "All individuals who purchased merchandise using a personal credit card or personal debit card at any retail store operated by Defendant within the United States during the

3

Class Period[2] who: [¶] Subclass A: Were issued an electronically printed receipt that reflected more than the last five digits of the card; and/or [¶] Subclass B: Were issued an electronically printed receipt that reflected the card's expiration date . . . . " Luckey sought, on behalf of the class, damages of between $100 and $1000 for each receipt which violated FACTA (with separate damages for each violation), punitive damages, and reasonable attorney fees. Luckey also sought an order declaring that Cotton On's credit and debit card receipt practices violate FACTA and an order enjoining Cotton On from continuing to do so.

We take judicial notice of the Superior Court docket sheet. No responsive pleading was filed. The only other documents filed in this case consisted of stipulations for continuance of the initial status conference, and the stipulation for appointment of a temporary judge which is at issue in this writ proceeding. Luckey represents that, from the time the complaint was filed, the parties engaged in "informal discovery and exchanged information" in preparation for a mediation held on October 28, 2013.

---

**2** Luckey defines the "Class Period" as beginning five years prior to the date of the filing of the complaint. As the complaint was filed May 5, 2013, the class period would begin in May 2008. FACTA provides something of a safe harbor ending June 3, 2008 – any person who printed a credit card expiration date on a receipt provided to a consumer cardholder prior to June 3, 2008, but who otherwise complied with FACTA, is not considered to be in willful noncompliance by reason of printing the expiration date. (15 U.S.C. § 1681n(d).) Luckey alleges that the safe harbor does not apply even to the transactions at issue prior to June 3, 2008, as Cotton On allegedly printed *both* expiration dates and eight digits of the credit card numbers on its receipts throughout the class period.

2. *The Settlement*

The mediation was held before a retired superior court judge. A settlement was reached at the mediation, and memorialized in a written settlement agreement.[3] It is a class settlement, defining the settlement class as "all individuals who purchased merchandise using a personal credit card or personal debit card at any retail store operated by Cotton On within the United States since May 9, 2008, who were issued an electronically printed receipt that reflected more than the last five digits of the card and/or were issued an electronically printed receipt that reflected the card's expiration date." It excludes persons who validly opt out of the class.

Under the terms of the settlement, the class is to receive compensation in the form of "Merchandise Credits," although the term is something of a misnomer. The compensation consists of a $5 credit on a transaction at or exceeding $25 at one of Cotton On's retail stores, during one pre-selected week.[4] The credits will apply to "every transaction in excess of $25.00, exclusive of tax, during this seven day period." Only one credit will be provided per transaction or per customer. In other words, each person buying something in excess of $25 at Cotton On, during the designated week, will receive a $5 discount – regardless of whether that person is a member of the class.

---

[3]   The copy of the settlement agreement provided as part of the record in the instant writ petition is not executed. Luckey represents, with the purported consent of counsel for Cotton On, that it is the final version of the settlement agreement with all terms agreed upon and finalized, although not fully executed.

[4]   The parties have not yet agreed upon the particular week; apparently, they want to select a week which will be far enough in the future that the settlement will receive final approval before the week occurs.

Moreover, each such shopper will receive a single $5 discount, regardless of how many FACTA violations Cotton On may have committed against that person. (We refer to this compensation as the "$5 off $25 sale.") Notice is to be provided to the class by means of e-mail notice to be provided "to all [Cotton On]'s customers in the United States for whom [Cotton On] possesses a valid e-mail address."[5] Notice would also be given on Cotton On's website and near each of its retail stores' cash registers. Class members would be given an opportunity to opt out of the class by means of a written request for exclusion. If class members sought to object to the settlement, they could do so by means of filing "signed, written objection[s]." The notice to be sent to the class, attached as an exhibit to the settlement agreement, provided that objecting class members could attend the final fairness hearing and request to be heard, but explained, "If you submit a written objection, you do not have to come to Court to talk about it. As long as you submitted your written objection on time, the Court will consider it."

Cotton On agreed to fund the settlement in the amount of $1,000,000. Of that amount, the parties agreed that Luckey's counsel could seek an award of attorney's fees and costs in an amount of $302,000. The parties also agreed that Luckey himself could receive a payment of $5,000 as class representative, and that $135,000 would be allocated to the administrative costs of the settlement.

In short, Luckey and Cotton On agreed to settle Cotton On's liability to the nationwide class in exchange for: (1) $5,000 paid to Luckey (whereas each class member would receive, at most, a merchandise credit for one one-thousandth of that

---

[5]      This is represented to be 345,000 people.

amount);[6] (2) $302,000 paid to Luckey's counsel (for work which, to that point, consisted of filing a complaint and amended complaint, and preparing for and attending a one-day mediation); and (3) a one-week $5 off $25 sale,[7] of which Cotton On would send notice to its e-mail customer list. The parties also agreed to a stipulated injunction enjoining Cotton On from including on its electronically-printed receipts either the cards' expiration dates or more than the last five digits of the cards' numbers, although the settlement agreement provides no time frame for when Cotton On would comply with this requirement. Pursuant to the settlement agreement, Cotton On would be released from any liability to the class for the FACTA violations alleged in Luckey's complaint.

In the settlement agreement, the parties agreed to stipulate, for the purposes of settlement only, to provisional certification of the class. The parties also agreed to stipulate to the appointment of a temporary judge for purposes of ruling on the motions for preliminary approval and final approval "to facilitate the expeditious resolution of these motions . . . . "

---

[6] As Luckey did not allege any actual damages, if he successfully prosecuted the FACTA action to completion, he would be entitled to, at the very most, $200 in statutory damages, unless he could establish a right to punitive damages.

[7] We note that, while the $5 off $25 credit would apply to any and all merchandise, "including merchandise already offered at a discounted sale price or other promotional price," there is nothing in the settlement agreement indicating that the one-week $5 off $25 sale must be in addition to, and not in lieu of, any other sale Cotton On would normally schedule.

### 3. *The Stipulation for Appointment of a Temporary Judge*

Pursuant to the settlement agreement, the parties stipulated for appointment of a temporary judge to hear the matter "until final determination thereof." Specifically, the parties intended to submit to the temporary judge the issues related to preliminary and final approval of the class action settlement. The same retired judge who had served as the mediator in this matter was identified by the parties as the proposed temporary judge.[8] The temporary judge would be privately compensated by the parties.[9]

The stipulation was presented to the Supervising Judge of the Civil Division, as required by the Superior Court of Los Angeles County, Local Rules, rule 2.24(a)(1). On June 2, 2014, the court issued a minute order declining to approve the stipulation. The court's analysis explained that, although Luckey's counsel could stipulate to the appointment of the temporary judge on behalf of Luckey, the "submitted papers do not demonstrate that the named plaintiffs or the attorneys are authorized to speak for all

---

[8]     We asked the parties to brief whether there are any ethical issues raised by having the same individual who mediated a settlement agreement act as a temporary judge in the matter. As we shall discuss, we have substantial concerns regarding the propriety of such an arrangement (see fn. 14, *post*), although this is not the basis for our holding in this matter.

[9]     There is some ambiguity as to which party would compensate the temporary judge. The parties' stipulation provides that the temporary judge shall be paid a flat fee of $5,000 plus case management fees. It further provides that the compensation of the temporary judge "shall be part of taxable costs herein, and shall be split equally into two payments between Plaintiffs and Defendants." However, the stipulation also provides that plaintiffs "shall bear and pay all taxable costs herein for the compensation to the [t]emporary [j]udge . . . . " Thereafter, the same document provides that "[t]he compensation of the [t]emporary [j]udge . . . shall be allocated by the [t]emporary [j]udge as a part of the judgment herein."

class members." Without the stipulation of all putative class members, the case could not be transferred to a temporary judge.[10]

    4.    *The Instant Writ Proceeding*

On January 24, 2014, Luckey filed a petition for writ of mandate challenging the trial court's order denying approval of the stipulation. On February 25, 2014, real party in interest Cotton On filed a statement of non-opposition. We issued an order to show cause and requested a response from the Superior Court. The response was filed and Luckey filed a reply, arguing, among other things, that the Superior Court lacked standing to file a brief in response to the writ petition.[11]

## CONTENTIONS OF THE PARTIES

Preliminarily, we address, and reject, Luckey's contention that respondent Superior Court lacked authority to file a response in this matter. We then turn to the main issue raised by this writ petition: whether, in a putative class action, settled prior to certification, counsel for the named plaintiff has the authority to enter into a stipulation, on behalf of the class, for the matters relating to settlement approval to be heard before a temporary judge. We conclude that counsel does not have this authority, and therefore deny the petition.

---

[10]    The court's order stated, "If the named parties so desire, they may file a noticed motion seeking to have this court to sign the Stipulation, with appropriate citation to any authorities in conflict with the" court's analysis. The parties did not do so.

[11]    Cotton On filed a continued statement of non-opposition to the writ petition.

9

## *DISCUSSION*

1. *Class Action Settlement Approval Procedures*

Before we can address any of the issues raised by this writ proceeding, a discussion of the relevant class action procedures is helpful.

" ' "Section 382 of the Code of Civil Procedure authorizes class suits in California when 'the question is one of a common or general interest, of many persons, or when the parties are numerous, and it is impracticable to bring them all before the court.' The burden is on the party seeking certification to establish the existence of both an ascertainable class and a well-defined community of interest among the class members. [Citation.]" ' [Citation.]" (*Global Minerals & Metals Corp. v. Superior Court* (2003) 113 Cal.App.4th 836, 848.) " ' "The community of interest requirement [for class certification] embodies three factors: (1) predominant common questions of law or fact; (2) class representatives with claims or defenses typical of the class; and (3) class representatives who can adequately represent the class." ' " (*Ibid.*) "A proponent of class certification must also demonstrate that the proposed class is manageable." (*Ibid.*)

In moving for class certification, "[t]he parties should endeavor to resolve any uncontroverted issues by written stipulation before the hearing. If all class issues are resolved by stipulation of the named parties and approved by the court before the

hearing, no hearing on class certification is necessary."[12] (Cal. Rules of Court, rule 3.764(e).)

As a general rule, settlement of a class action requires the approval of the court after a hearing. (Cal. Rules of Court, rule 3.769(a).) This is in order to "prevent fraud, collusion or unfairness to the class." (*Dunk v. Ford Motor Co.* (1996) 48 Cal.App.4th 1794, 1800.) "The court must determine the settlement is fair, adequate, and reasonable. [Citations.] The purpose of the requirement is 'the protection of those class members, including the named plaintiffs, whose rights may not have been given due regard by the negotiating parties.' [Citation.]" (*Id*. at p. 1801, fn. omitted.)

California Rules of Court, rule 3.769 sets forth the procedure to be followed when a class action is provisionally settled *prior* to class certification. In that case, certification and settlement approval occur simultaneously. First, a party to the settlement moves for "preliminary approval of the settlement." (Cal. Rules of Court, rule 3.769(c).) After the hearing, the court makes an order approving or denying "certification of a provisional settlement class." (Cal. Rules of Court, rule 3.769(d).) If the court grants preliminary approval, it must set a final approval hearing, and provide for notice to be given to the class. (Cal. Rules of Court, rule 3.769(e).) "The notice must contain an explanation of the proposed settlement and procedures for class members to follow in filing written objections to it and in arranging to appear at the

---

[12] Luckey notes that class certification may be resolved by stipulation of the named parties. We emphasize that, pursuant to California Rules of Court, rule 3.764(e), a stipulation regarding class certification must be "approved by the court" in order to foreclose a hearing on certification.

settlement hearing and state any objections to the proposed settlement." (Cal. Rules of Court, rule 3.769(f).) At the final approval hearing, "the court must conduct an inquiry into the fairness of the proposed settlement." (Cal. Rules of Court, rule 3.769(g).) If the court approves the settlement agreement, it enters judgment accordingly. (Cal. Rules of Court, rule 3.769(h).)

Because a court evaluating certification of a class action which settled prior to certification is considering certification only in the context of settlement, the court's evaluation of the certification issues is somewhat different from its consideration of certification issues when the class action has not yet settled. In some ways, the court's review of certification of a settlement-only class is lessened; as no trial is anticipated in a settlement-only class case, "the case management issues inherent in the ascertainable class determination need not be confronted." (*Global Minerals & Metals Corp. v. Superior Court, supra,* 113 Cal.App.4th at p. 859.) However, other certification issues, "those designed to protect absentees by blocking unwarranted or overbroad class definitions" require heightened scrutiny in the settlement-only class context "for a court asked to certify a settlement class will lack the opportunity, present when a case is litigated, to adjust the class, informed by the proceedings as they unfold." (*Amchem Products, Inc. v. Windsor* (1997) 521 U.S. 591, 620.)

Moreover, "class action *settlements* should be scrutinized more carefully if there has been no adversary certification." (*Dunk v. Ford Motor Co., supra,* 46 Cal.App.4th at p. 1803, fn. 9, italics added; see also *7-Eleven Owners for Fair Franchising v. Southland Corp.* (2000) 85 Cal.App.4th 1135, 1161-1162.) "This reflects concerns that

12

the absent class members, whose rights may not have been considered by the negotiating parties, be adequately protected against fraud and collusion." (*Wershba v. Apple Computer, Inc.* (2001) 91 Cal.App.4th 224, 240.) "[T]hese concerns are satisfied by a careful fairness review of the settlement by the trial court." (*Ibid.*)

As we are concerned in this case with the process of the fairness determination, and not the fairness determination itself, we need not address the factors to be considered in such a determination.[13] Ultimately, " 'in the final analysis it is the court that bears the responsibility to ensure that the recovery represents a reasonable compromise, given the magnitude and apparent merit of the claims being released, discounted by the risks and expenses of attempting to establish and collect on those

---

[13] "The trial court has broad discretion to determine whether the settlement is fair. [Citation.] It should consider relevant factors, such as the strength of plaintiffs' case, the risk, expense, complexity and likely duration of further litigation, the risk of maintaining class action status through trial, the amount offered in settlement, the extent of discovery completed and the stage of the proceedings, the experience and views of counsel, the presence of a governmental participant, and the reaction of the class members to the proposed settlement. [Citation.] The list of factors is not exhaustive and should be tailored to each case. Due regard should be given to what is otherwise a private consensual agreement between the parties." (*Dunk v. Ford Motor Co., supra,* 48 Cal.App.4th at p. 1801.) The *Dunk* court concluded that a presumption of fairness arises where (1) the settlement is reached through arm's length bargaining; (2) investigation and discovery are sufficient to allow the court and counsel to act intelligently; (3) counsel is experienced in similar litigation; and (4) the percentage of objectors is small. (*Id*. at p. 1802.) Later authority "emphasizes that this is only an initial presumption; a trial court's approval of a class action settlement will be vacated if the court 'is not provided with basic information about the nature and magnitude of the claims in question and the basis for concluding that the consideration being paid for the release of those claims represents a reasonable compromise.' [Citation.] In short, the trial court may not determine the adequacy of a class action settlement 'without independently satisfying itself that the consideration being received for the release of the class members' claims is reasonable in light of the strengths and weaknesses of the claims and the risks of the particular litigation.' [Citation.]" (*Munoz v. BCI Coca-Cola Bottling Co. of Los Angeles* (2010) 186 Cal.App.4th 399, 408.)

claims by pursuing the litigation. "The court has a fiduciary responsibility as guardians of the rights of the absentee class members when deciding whether to approve a settlement agreement." ' [Citation.]"**14** (*Munoz v. BCI Coca-Cola Bottling Co. of Los Angeles, supra,* 186 Cal.App.4th at p. 408, fn. 5.)

    2.    *The Superior Court Properly Filed a Responsive Brief*

We now turn to Luckey's challenge to the Superior Court's appearance in this writ proceeding. Luckey contends that the Superior Court lacks standing to file a responsive brief.

The "Superior Court is a 'party' in an original mandate proceeding before this court; Superior Court is named as the 'Respondent.' As such, proof of service must be served upon it, and it is authorized by statute to file points and authorities in opposition. [Citation.]" (*James G. v. Superior Court* (2000) 80 Cal.App.4th 275, 279.) "This notwithstanding, . . . California case law provides that a trial court may not *initiate* writ

---

**14**    It is for these reasons that we have concerns regarding the propriety of having the individual who mediated a class settlement act as a temporary judge to rule on the fairness and reasonableness of that same settlement. A class member objecting to the settlement as unfair will certainly believe he or she is facing an uphill battle in convincing the temporary judge of the merits of the objection; the temporary judge clearly believed in the propriety of the settlement when acting as a mediator. This could well raise a question of an appearance of impropriety. Canon 6D(3)(a)(vii)(C) provides that a temporary judge shall disqualify himself or herself for any reason "a person aware of the facts might reasonably entertain a doubt that the temporary judge would be able to be impartial." Indeed, the court in *Dunk v. Ford Motor Co., supra,* 48 Cal.App.4th at pp. 1802-1803 noted, in support of its conclusion that a class settlement was fair and reasonable, that "[t]he independent mediator, a retired superior court judge and appellate justice with substantial experience and respect in the legal community, recommended the settlement." Surely, in the instant case, it would be problematic for the temporary judge to rely on a similar fact – that a respected retired superior court judge had recommended the settlement in mediation – when the temporary judge *had been the mediator* making that recommendation.

14

proceedings and may appear to *defend* itself in a writ proceeding only in a limited number of circumstances." (*Ibid.*) Such limitations are imposed for two reasons: first, the trial court is generally a neutral party and must remain impartial; and second, it is generally the real party in interest, not the court, that has the beneficial interest in the litigation and is therefore the aggrieved party. (*Id*. at p. 280.)

The mere fact that the real party in interest does not oppose a writ petition is not, standing alone, sufficient to justify the trial court in assuming an advocacy position in the Court of Appeal. (*Ng v. Superior Court* (1997) 52 Cal.App.4th 1010, 1019, disapproved on another ground in *Curle v. Superior Court* (2001) 24 Cal.4th 1057, 1069.) Lower courts may appear to defend their actions on appeal when the real party in interest does not appear; and (1) the issue involved directly impacts the operations and procedures of the court, or (2) potentially imposes financial obligations which would directly affect the court's operations. (*Ibid.*) Additionally, a trial court can be permitted to appear on appeal when, due to unique circumstances, the real party in interest cannot "meaningfully oppose the petition." (*James G. v. Superior Court, supra*, at p. 282 [real party in interest could not oppose the petition because the proceedings in question were confidential].) When a potentially adverse act occurred and no party other than the Superior Court can adequately defend or explain the act, the Superior Court's appearance is essential for meaningful appellate review. (*Ibid.*)

In this case, Luckey suggests that the Superior Court lacked standing to oppose his writ petition because the Superior Court "has presented no evidence that the issues presented impact the operations or procedures of the Court or that the decision will

15

impose any financial obligations on the court's operations." The argument is puzzling given the arguments Luckey makes in support of his petition. First, Luckey argues that he is, in fact, challenging a *procedure* of the court, not merely an isolated ruling.[15] Luckey represents that the Superior Court previously "routinely issued orders appointing temporary judges to preside over class action matters," but, "in or around November 2013," the court "stopped" approving those stipulations and began denying them. Second, Luckey argues at length, although without evidentiary basis, that the court's financial obligations are, in fact, at issue. Luckey argues that lengthy delays are now the reality in class action litigation, and that parties should be permitted to avoid these delays by the use of temporary judges – a procedure which, according to Luckey, would "alleviate[] space for other litigants" at Superior Court. Indeed, Luckey represents that the Superior Court previously appointed temporary judges to serve in class action matters "in part[] due to congested and backlogged dockets." As the Superior Court's procedures and financial obligations are at issue, the Superior Court has a right to appear.

Moreover, due to the unique procedural circumstances of the case, the Superior Court is the only party in a position to defend the ruling below. At the heart of this case is a class action settlement reached by the named plaintiff and the defendant. A determination will have to be made as to whether that settlement is fair and reasonable to the absent class members; we are called upon to determine whether

---

[15]    Indeed, the "Introduction" section of Luckey's petition states that the petition "raises issues of first impression that are of great importance to the management of the state's trial courts."

a temporary judge can make that determination. While the named plaintiff and the defendant may agree that a temporary judge is appropriate, absent class members may not agree. The Superior Court denied approval of the stipulation for this very reason; the court was concerned that there was no agreement by the absent class members. But, by the very nature of the procedural history of this case – the class has not yet been certified – no absent class member has notice of this writ petition and can appear to defend his or her right to have the reasonableness of the settlement agreement determined by a trial court judge. As such, the Superior Court is the only party who can appear and represent the interest of the absent class members; its appearance is therefore essential for meaningful appellate review.

Finally, if we are mistaken in the above analysis and the Superior Court lacks standing to appear, we will simply consider the Superior Court's brief as an amicus brief. (*Entente Design, Inc. v. Superior Court* (2013) 214 Cal.App.4th 385, 389, fn. 2; *Zilog, Inc. v. Superior Court* (2001) 86 Cal.App.4th 1309, 1315, fn. 2.)

3.  *The Trial Court Did Not Err in Denying Approval of the Stipulation to a Temporary Judge*

The main issue presented by this writ petition is whether the trial court erred in denying approval of the stipulation to a temporary judge in this pre-certification settlement class action. Specifically, the named plaintiff and the defendant sought to stipulate to a temporary judge for resolution of the certification and settlement approval issues which would be considered at the preliminary and final approval hearings. The trial court denied approval on the basis that the absent class members had not joined in

17

the stipulation. In order to review the propriety of this order, we will consider: (1) the constitutional provision providing for the use of temporary judges; (2) the applicable rules of court; and (3) public policy concerns. We will conclude that each of these sources of authority supports the trial court's ruling.

a. *The Constitution*

"The judicial power of the state is vested in the Supreme Court, Courts of Appeal, superior courts, municipal courts, and justice courts. [Citations.] The California Constitution provides that the Governor appoints superior court judges when there are vacancies, but that after appointment, on completion of the term, superior court judges must sit for nonpartisan election. [Citations.] It also provides for qualifications [citation], a six-year term [citation], and limited grounds for removal [citation]." (*In re Horton* (1991) 54 Cal.3d 82, 89-90.) "Since 1862, our Constitution has contemplated the use of court commissioners to perform 'chamber business' [citations], now referred to as 'subordinate judicial duties.' [Citations.] In addition, since 1879, our Constitution has permitted a cause to be tried in the superior court by a temporary judge. [Citations.]" (*Id.* at p. 90.)

California Constitution, article VI, section 21 provides, "On stipulation of the parties litigant the court may order a cause to be tried by a temporary judge who is a member of the State Bar, sworn and empowered to act until final determination of the cause." "The delegation of judicial power is constitutionally limited and can only be effected by a 'stipulation of the parties litigant.' [Citation.] In the absence of the parties' consent, the Constitution only allows the delegation of the performance of

18

subordinate judicial duties, which do not include deciding questions of law. [Citation.]" (*Kim v. Superior Court* (1998) 64 Cal.App.4th 256, 259-260.) "Absent a valid stipulation, a temporary judge has no jurisdiction to act and any actions purportedly taken are therefore void." (*Del Real v. City of Riverside* (2002) 95 Cal.App.4th 761, 765.)

In this case, counsel for Luckey attempted to enter into the stipulation for a temporary judge on behalf of the entire putative class. This case, therefore, raises the issue whether absent class members in a pre-certification class are considered "parties litigant," within the meaning of California Constitution, article VI, section 21, who must stipulate to the temporary judge in order for such a stipulation to be effective.

A similar issue was considered by our Supreme Court in *Estate of Kent* (1936) 6 Cal.2d 154, which decided the issue of whether individuals and entities (heirs, devisees, and creditors) in a probate action who had been given notice but failed to appear were required to join in a stipulation to a temporary judge in order for that stipulation to be effective. The court first considered which individuals and entities are considered "parties" in a probate proceeding (*id*. at p. 160) and then considered the further meaning of "parties litigant" (*id.* at pp. 162-163).

The court first concluded that, in a probate matter, many individuals and entities must be given notice, and have the right to appear and become parties in the action. If, however, they fail to appear in the action, they cannot be considered parties. (*Id*. at pp. 160-161.) As to the issue of "parties litigant," the court stated: " 'Under the customary rules of constitutional interpretation each word should be given some value.

19

In the constitutional provision the word "litigant" qualifies the word "parties" and the two words must be given some value beyond the one word "parties". Obviously the phrase "parties litigant" means the parties who are taking part in the litigation,—those who have appeared therein. There are many causes at law and in equity where the rights of parties are determined although the parties themselves do not conduct the litigation. These actions, where contested, proceed under the direction of parties to the controversy who have appeared—who are "parties litigant". At the same time the proceeding determines the rights of other parties in interest but not litigant. Among such cases are receiverships, representative suits, actions by and against trustees, and, assuming that nonappearing heirs and devisees and creditors are parties, then the several proceedings in probate.' " (*Estate of Kent, supra,* 6 Cal.2d at p. 162.) "Active parties to the litigation may bind passive parties by stipulation." (*Id*. at p. 163.)

The law is clear, however, that in order for passive parties to be bound, they must have had notice and chosen not to appear or otherwise litigate. "It has repeatedly been held that the term ' "parties litigant" means the parties who are taking part in the litigation,—those who have appeared therein.' [Citation.] A party who has notice of a proceeding but fails to appear or otherwise take part loses the status of party litigant. [Citation.]" (*Reisman v. Shahverdian* (1984) 153 Cal.App.3d 1074, 1089.) "Party litigant status can be lost by a party who fails to appear at trial despite receipt of proper notice." (*Id*. at p. 1092.)

An application of the *Estate of Kent* analysis to the instant case is complicated by the fact that, in a class action context, whether non-representative class members are

considered "parties" is not a question easily answered. In *Earley v. Superior Court* (2000) 79 Cal.App.4th 1420, we explained that "[a]bsent class members may be 'parties' for certain purposes, but for other purposes they are not." (*Id*. at p. 1434, fn. 11.) What is clear, however, is that absent class members in a *post-certification* class – those who have received notice and elected not to appear or opt out – are not "parties litigant." In such a situation, the court has made a finding that the named plaintiff can adequately represent the absent class members, and the absent class members, by declining to intervene or opt out, have impliedly consented to be represented by the named plaintiff. "A class action is a representative action in which the class representatives assume a fiduciary responsibility to prosecute the action on behalf of the absent parties. [Citation.] The representative parties not only make the decision to bring the case in the first place, but even after class certification and notice, they are the ones responsible for trying the case, appearing in court, and working with class counsel on behalf of absent members."[16] (*Id*. at p. 1434.)

---

[16] For this reason, an argument could be made that class counsel can stipulate to a temporary judge on behalf of an *already certified class*. As the class in this case was not yet certified, the issue is not before this court. We do note, however, that Luckey interprets the argument that a class action must already be certified before class counsel can stipulate to a temporary judge as implying that the stipulation could come in the instant action after the preliminary approval hearing. This is incorrect; after preliminary approval, a settlement class is only *provisionally* certified (Cal. Rules of Court, rule 3.769(d)) and the class members have not yet received notice and an opportunity to appear in the action (Cal. Rules of Court, rule 3.769(f)). It may well be that class counsel can stipulate to a temporary judge on behalf of an already certified class *because the class members have received notice and chosen not to appear.* This rationale simply does not exist with a provisionally certified class following a preliminary approval hearing.

21

We, however, do not have such a circumstance before us in this case. No class has been certified; no notice has been given absent class members; no absent class members have been given the opportunity to appear. " 'After the members of the class have been properly notified of the action, they are required to decide whether to remain members of the class represented by plaintiffs' counsel and become bound by a favorable or unfavorable judgment in the action, whether to intervene in the action through counsel of their own choosing, or whether to "opt out" of the action and pursue their own independent remedies, such as negotiation with defendants, initiation of their own action, or intervention in some other action.' [Citations.]" (*Carter v. City of Los Angeles* (2014) 224 Cal.App.4th 808, 818.) None of this has yet occurred in the instant action. Some members of the putative class, upon receiving notice, may choose to intervene in the action and become parties litigant. Other members of the putative class, upon receiving notice, may choose to opt out. At this stage of the proceeding, it is simply unknown which members of the putative class will choose to become parties litigant, which members will choose to opt out, and which members will choose to be absent class members bound by the actions taken by class counsel. Any identification of the "parties litigant" in this case is, therefore, premature. When notice has not yet been given to the putative class members, it cannot be determined who will be the parties litigant.

Thus, we conclude that, while Luckey and Cotton On were the only "parties litigant" at the time of the stipulation to the temporary judge, they were also the only parties who could be bound by such a stipulation. As the conceded purpose of the

stipulation was to bind *all* putative class members to the stipulation,[17] and they could not be bound until they had been given notice and an opportunity to appear, the stipulation was ineffective. The state Constitution provides that, for a stipulation to a temporary judge to be effective, that stipulation must be made by the parties litigant. In a pre-certification class action, the parties litigant have not yet been identified; thus, no such stipulation can be effectively made.[18]

   b.   *The Applicable Rules of Court*

Our consideration of the applicable rules of court leads us to the same conclusion. California Rules of Court, rule 2.835(b) governs requests to intervene in matters pending before temporary judges. It states, in pertinent part, "A motion for leave to file a complaint for intervention in a case pending before a temporary judge requested by the parties must be filed with the court and served on all parties and the temporary judge. The motion must be heard by the trial court judge to whom the case is

---

[17]   Luckey takes the position that if, after receiving notice, any class member sought to object to the use of a temporary judge, that class member could make that objection *to the temporary judge*. In other words, Luckey takes the position that the temporary judge could rule on a class member's objection to the use of the temporary judge, *despite the fact that the objecting class member never stipulated to the temporary judge* having jurisdiction to hear that objection. This cannot be. The only plaintiff to stipulate to the temporary judge is Luckey; he could not speak for the class members who never even had notice that he purported to speak for them.

[18]   Luckey argues that, taken to its logical extreme, this rationale would lead to the conclusion that putative class counsel could never stipulate to *anything* in a pre-certification class, including "issues regarding hearing dates, deadlines for amendments to the pleadings, and a wide range of other case management issues." We disagree. There is a fundamental difference between stipulating to a continuance and stipulating to waive an absent putative class member's constitutional right to have the matter heard by a duly appointed trial court judge.

23

assigned or, if the case has not been assigned, by the presiding judge or his or her designee.  If intervention is allowed, the case must be returned to the trial court docket unless all parties stipulate . . . to proceed before the temporary judge."  In other words, when a party seeks to intervene in a matter pending before a temporary judge, that party's right to intervene must be determined by the trial court, not the temporary judge.  Furthermore, if intervention is permitted, the case must be returned to trial court unless the intervenor also agrees to the temporary judge.

As we have discussed above, a class member receiving notice of a class action can choose to intervene in the action.  Moreover, "[i]n the context of a class settlement, objecting is the procedural equivalent of intervening."  (*Wershba v. Apple Computer, Inc., supra,*  91 Cal.App.4th at p. 253.)  As such, in the context of a class settlement, if a class member seeks to object, the class member has the right to have his or her objection heard before the trial judge, unless that class member specifically stipulates to the temporary judge hearing the matter.  As class member objections to the settlement are heard at the final approval hearing, it would be a useless act for a named plaintiff and class action defendant to stipulate to a temporary judge to preside over the final approval hearing – at least until such time as it has been determined that there will be no class member objections.[19]

---

[19]     In our request for letter briefing, we asked the parties to address the effect of California Rules of Court, rule 2.835(b) on Luckey's argument.  In response, Luckey conceded that, if a class member sought to intervene, that motion would be heard by the trial court, and, if granted, the matter must be returned from the temporary judge to the trial court judge.  However, Luckey argued that a different result would occur with a class member who merely filed a written objection and did not formally appear.

Indeed, because the presence of intervenors requires a matter before a temporary judge to be returned to the trial court, the Superior Court has established a local rule indicating that when parties stipulate to a temporary judge, "the parties and their attorneys represent that (1) they are the only parties to the case, and (2) no new parties will be added." (Super. Ct. L.A. County, Local Rules, rule 2.24(g).) In a pre-certification class action, no party could honestly make such a representation, as it

---

Luckey takes issues with the proposition that a class member who files a written objection, but does not appear, should be considered an intervenor for the purposes of this rule. In some ways, the issue is not technically before us – the fact that any class members who may file motions to intervene have not yet been identified is itself dispositive. Nonetheless, we reject Luckey's argument and conclude that an objector is the equivalent of an intervenor in this context for two reasons. First, in *Wershba v. Apple Computer, Inc., supra,* 91 Cal.App.4th at p. 253, the court held that objecting was the procedural equivalent of intervening in a case where the class notice did not inform the class members of their right to seek intervention, but only "presented the options of accepting the benefits of the settlement, objecting or opting out." (*Ibid.*) Similarly, the notice to be sent to the class in this case, pursuant to the settlement agreement, informs class members of their rights to object or opt out and does not otherwise inform them of intervention as an option. Thus, Luckey's notice to the class treats objection as the equivalent of intervention; we do the same. Second, a class member objecting to the settlement is taking an active part in the litigation and becomes a party litigant. (This is especially so in this case, where the class notice specifically informs the class members that they need not come to the hearing in order for their written objections to be considered by the court.) Luckey suggests that a class member merely objecting to the settlement does not become a party litigant unless that objector makes a formal appearance in the case. We disagree. The law does not define "parties litigant" as those who have formally appeared and non-parties litigant as those who have notice but have not formally appeared. Instead, the focus is on whether the parties "are taking part in the litigation"; the question is whether, once a party has notice, the party "fails to appear *or otherwise take part.*" (*Reisman v. Shahverdian, supra,* 153 Cal.App.3d at p. 1089, italics added.) A class member who, upon receiving notice, files a written objection is clearly taking part in the litigation. He or she is therefore a party litigant.

25

is unknown which, if any, class members will chose to intervene once the class is certified and notice is given to the class members.[20]

Therefore, California Rules of Court, rule 2.835(b) and Superior Court, Local Rules, rule 2.24(g) both lead to the conclusion that, in a pre-certification class, there can be no stipulation to a temporary judge which can bind the absent class members.[21]

---

[20] In his writ petition, Luckey affirmatively represented that the stipulation in this case "complied with the provisions of . . . Los Angeles Superior Court Local Rule, Rule 2.24." By request for additional briefing, we called the parties' attention to the fact that subdivision (g) of that rule provides that, by submitting a stipulation, the parties and their attorneys represent that no new parties will be added to the case, and specifically asked the parties to brief the issue of whether this rule precluded a stipulation in the context of a pre-certification settlement class. While Luckey's response simply stated that the local rule did not prevent such a stipulation, the response failed to address how any such stipulation could be in compliance with the cited subdivision. As discussed above, Luckey took the position that an objection to a stipulated judgment is not the equivalent of a request to intervene, but he conceded that both are possible responses to receipt of class notice. As Luckey concedes that, at a minimum, class members may move to intervene upon receiving class notice, neither Luckey nor his counsel could have represented, at the time of the stipulation, that no new parties would be added to the case.

[21] It could be argued that the rules of court (and local rules) relating to temporary judges are not mandatory. The rules of court provide that a stipulation to a temporary judge must be in writing. (Cal. Rules of Court, rule 2.831(a).) However, several cases have concluded that such a stipulation need not be in writing or even expressly made, but can be implied by the conduct of the parties. (*Gridley v. Gridley* (2008) 166 Cal.App.4th 1579-1580; *Estate of Fain* (1999) 75 Cal.App.4th 973, 988-989.) These cases have concluded that the requirements of the rules of court, in excess of the requirements of the Constitution, are "directory rather than mandatory." (*Gridley v. Gridley, supra,* 166 Cal.App.4th at p. 1579; *Estate of Fain, supra,* 75 Cal.App.4th at p. 989.) " '[T]he "mandatory" or "directory" designation does not refer to whether a particular statutory requirement is obligatory or permissive, but instead denotes " 'whether the failure to comply with a particular procedural step will or will not have the effect of invalidating the governmental action to which the procedural requirement relates.' " [Citation.]' [Citation.]" (*People v. Gray* (2014) 58 Cal.4th 901, 909.) In other words, while it is not reversible error for a case to proceed before a temporary judge on an oral or implied stipulation, it is nonetheless required that such a stipulation

c. *Public Policy Concerns*

Finally, we consider the impact of public policy concerns. First, we examine the public policy issues raised by the unique context of a pre-certification settlement class. Second, we consider policy arguments regarding due process protections. Third, we consider policy arguments regarding the constitutional right to choose a temporary judge. Fourth and finally, we discuss Luckey's argument regarding the policy in favor of allowing parties to resolve their disputes as they wish.

First, we again note the procedural posture of the case at the time of the stipulation. Luckey and Cotton On had reached a pre-certification settlement of the putative class action. They sought appointment of a temporary judge to preside over the preliminary and final approval hearings, at which class certification issues and the fairness of the settlement would be considered. In the context of pre-certification settlement, both of these determinations require the trial court to exercise heightened scrutiny to protect the interests of absent class members. In its certification inquiry, the court is required to ensure that the class definition is not unwarranted or overbroad. In its fairness inquiry, the court must be vigilant against fraud and collusion. The court is, in short, acting in a fiduciary capacity as guardian of the rights of absentee class members. Luckey would have the court *delegate* this fiduciary responsibility to a temporary judge of Luckey's selection, purely on Luckey's agreement that this is acceptable. But the trial court should not be required to yield its fiduciary responsibility

be in writing. Thus, *even if* the rule of court and local rule discussed above (regarding intervenors) are directory rather than mandatory, a trial court must still comply with them, and certainly does not err by doing so.

27

to any member of the State Bar[22] so quickly.  We do not, by this opinion, mean to

impugn the qualifications or good faith of the parties' chosen temporary judge in this

[22]   In response to our request for additional briefing, the Superior Court argued that California Rules of Court, rule 2.811(b) "grants the presiding judge sole discretion in making temporary judge appointments" and that California Rules of Court, rule 2.812(b)(5) "allows the presiding judge to assess whether a proposed temporary judge: 'Has satisfied any additional conditions that the court may require for an attorney to be appointed as a temporary judge for a particular assignment or type of case in that court.' "  At the hearing on the order to show cause, Luckey agreed, arguing that California Rules of Court, rule 2.812 imposes numerous experience and education requirements on a temporary judge.  Both parties are in error.  As explained in California Rules of Court, rule 2.810(a), the requirements of California Rules of Court, rules 2.810 through 2.819 "apply to attorneys who serve as court-appointed temporary judges in the trial courts.  The rules do not apply to . . . attorneys designated by the courts to serve as temporary judges at the parties' request."

This is not to say that the presiding judge is *required* to approve any temporary judge designated by the parties if the stipulation is otherwise proper.  Indeed, Luckey concedes that the presiding judge retains discretion to consider the qualifications and experience of a proposed temporary judge.  We agree.  California Constitution, article VI, section 21 provides that "[o]n stipulation of the parties litigant the court *may* order a cause to be tried by a temporary judge who is a member of the State Bar . . . ."  (Italics added.)  The use of "may" implies discretion; the Constitution could have stated "must," if it was believed the courts lacked discretion to deny approval of a stipulation.  Moreover, prior to a 1966 repeal and reenactment, the constitutional provision governing temporary judges provided, in pertinent part, that "[t]he selection of such judge pro tempore shall be subject to the approval and order of the court in which said cause is pending . . . ."  (Cal. Const., art. VI, fmr. § 5.)  "The purpose of the [1966] revision was to state the substance of the prior provision 'concisely in modern terms.' [Citation.]" (*In re Horton, supra,* 54 Cal.3d at p. 90, fn. 1.)  Thus, it would appear that the use of "may" was, in fact, intended to retain the provision that the selection of a temporary judge "shall be subject to the approval . . . of the court."  Moreover, logic supports the argument.  The Constitution permits the parties to stipulate to *any* member of the State Bar as a temporary judge.  Surely, a trial court must have discretion to refuse approval of a stipulation for a temporary judge if, for example, the identified temporary judge has a lengthy record of discipline, is related to one of the parties, is a member of the class, has factual knowledge of the dispute, or has no relevant experience in the type of case at issue.  A proceeding before a temporary judge is still a proceeding with the court's imprimatur; a court should not be forced to allow an action to proceed before an obviously unqualified temporary judge simply because the parties wish it.

case.  However, just because the parties may have chosen a qualified temporary judge in the instant action does not mean that a trial court should be required to cease protecting the interests of absent class members on nothing more than the mere request of the named plaintiff.

Second, Luckey argues that, if the stipulation to the temporary judge is approved, the class members will suffer no deprivation of their due process rights because all statutes, rules of court, rules of judicial ethics, and case law remain applicable to the proceedings before a temporary judge.  Yet this argument proves too much; if there is no deprivation of rights worked by proceeding before a temporary judge, parties could be ordered to proceed before a temporary judge in the absence of a stipulation, and, indeed, against their will.  This is clearly not the case; our Constitution *requires* a stipulation before a matter can be heard before a temporary judge because the parties have a right to have their dispute heard before a duly appointed judge.  Absent class members cannot be deprived of their constitutional right to have their class rights determined by a duly appointed judge without, at the very least, a certification order, notice, and the opportunity to appear.[23]

Third, Luckey argues that "absent the relief requested herein, [petitioners] will be deprived of their constitutional right to have their case resolved by a privately compensated judge."  On the contrary, if Luckey and Cotton On wish to resolve *their* dispute by a privately compensated temporary judge, they are free to do so.  However, if

---

[23]    As already noted, the issue of whether a representative plaintiff may stipulate to a temporary judge on behalf of a post-certification class is not before us.

they wish to resolve the dispute between *the entire putative class* and Cotton On, they cannot do so in the absence of a certification order and notice to the class.[24]  It is the putative class that is at risk of losing its constitutional right, not Luckey.

Fourth, Luckey argues that, based on *Neary v. Regents of University of California* (1992) 3 Cal.4th 273 (*Neary*), the policy of California courts is to respect the parties' decisions regarding how they would like their litigation to proceed.  It is true that, as a general rule, "[t]he courts exist for litigants.  Litigants do not exist for courts." (*Id*. at p. 280.)  Therefore, when the parties seek to resolve their disputes amicably, the courts should respect the parties' choice and assist them in settlement.  (*Ibid.*)  This does not mean, however, that when the *named* parties seek to agree to a temporary judge on behalf of a pre-certification settlement class, the courts must approve the agreement.  "Unlike *Neary*, this is not an ordinary civil action."  (*Consumer Advocacy Group, Inc. v. Kintetsu Enterprises of America* (2006) 141 Cal.App.4th 46, 63 [distinguishing the policy in *Neary* in a Proposition 65 case, because the public interest is implicated in the latter].)  The interests of unnamed pre-certification class members are present in this case, and the courts cannot permit their respect for the litigants' rights to agree on how to resolve their dispute to outweigh the court's responsibility to protect the rights of absent class members.

---

[24]     We again emphasize that the *only* basis on which Luckey seeks to bind the class is the fact that Luckey filed a putative class action.  Luckey has not been found to be a proper representative of the putative class; the class has not been certified; and the class members have been given no opportunity to opt out.  Luckey seeks to waive, on behalf of  *hundreds of thousands of people*, their right to have their dispute heard before a duly-appointed trial court judge simply on the basis that he has filed a complaint in which he seeks to represent them.

## *DISPOSITION*

The writ petition is denied.


## *CERTIFIED FOR PUBLICATION*



CROSKEY, Acting P. J.

WE CONCUR:



KITCHING, J.



ALDRICH, J.