Filed 11/18/21  Marriage of Lakritz CA4/3

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION THREE

|  |  |
|---|---|
| In re Marriage of OPHIRA and LEOR LAKRITZ.<br><br>OPHIRA LAKRITZ,<br><br>    Appellant,<br><br>      v.<br><br>LEOR LAKRITZ,<br><br>    Respondent. | G059521<br><br>(Super. Ct. No. 18D002874)<br><br>O P I N I O N |

Appeal from a postjudgment order of the Superior Court of Orange County, Sheila Prell Sonenshine, Temporary Judge.  (Pursuant to Cal. Const., art. VI, § 21.)  Affirmed.  Motion to dismiss denied.

Law Office of Dennis D. Burns and Dennis D. Burns; Higgs Fletcher & Mack, John Morris, Rachel M. Garrard, and Steven M. Brunolli for Appellant.

Phillips Whisnant Gazin Gorczyca & Curtin, Gary S. Gorczyca and Daniel Gorczyca for Respondent.

In this marital dissolution case, Ophira and Leor Lakritz[1] appeal from a postjudgment order. After stipulating to the appointment of a temporary judge, the parties stipulated to a partial judgment that settled disputes regarding the division of multiple real estate assets. Ophira later filed a motion seeking clarification of one portion of the judgment, or alternatively, a motion to set it aside. Ophira's appeal challenges the temporary judge's ruling denying her motion. We conclude Ophira's contentions on appeal lack merit, and we affirm the postjudgment order.

FACTS

Ophira and Leor married in 1985 and separated in 2018. The superior court entered a status only judgment dissolving the marriage in August 2019. Two years later, the parties stipulated to the appointment of Justice Sheila Prell Sonenshine (Ret.) as a temporary judge. The court agreed and ordered the appointment. The parties agreed to split the fees associated with Justice Sonenshine and the JAMS, Inc. (JAMS) facilities.

In January 2020, the parties reached a settlement regarding the division and characterization of multiple properties and assets. They signed a stipulation, which was incorporated into a judgment on reserved issues, filed in the superior court on March 11, 2020.

The judgment was organized into subparts labeled A through G. Relevant to this case, paragraph D provided the following: "[Leor] will be awarded as his sole and separate property, all properties identified on list 'B' attached, plus the [three] Israeli properties including [two] related lots. [Leor] will take the Israeli properties at the values they were appraised in Israel, per the Israel [c]ourt order." Paragraph E provided Leor would also be awarded the Apple Valley property located on South Street.

---

[1] For the sake of clarity, we will refer to the parties by their first names.

2

Paragraph F stated Ophira would be "awarded as her sole and separate property, all properties identified on list 'A' attached (excluding State Street)." Paragraph K provided the following: "The parties acknowledge that they have an interest in Carlsbad partnership, known as State Street in Carlsbad. This property is currently in litigation. Any equalization payment from the above division will come from Carlsbad separate expense or cash."

Paragraph G noted each party agreed to "prepare [the] respective deeds for properties they [were] awarded and all necessary deeds/documents will be drafted as quickly as possible." In paragraph J, the parties "confirm[ed]" they may be charged with any expense they have paid from the community" and the court had continuing jurisdiction over this issue. Paragraph Q outlined 28 "remaining issues" to be resolved by the judge pro tem, including division of retirement and bank accounts, personal property, attorney fees, etc. This paragraph did not mention any of the properties identified on list A or B or the Israeli properties. Finally, paragraph I of the judgment provided the following: "The parties confirm all properties are community property and any separate property claims are waived."

Our summary of what transpired next is based on documents included in the appellant's appendix but that were not filed in the superior court.[2] At the end of May 2020, Ophira filed a motion asking Justice Sonenshine to clarify the effect of paragraph I of the stipulation and judgment. Alternatively, she requested an order setting aside paragraph I from the stipulation and judgment. Citing Family Code[3] sections 2122 and 2640, Ophira asserted paragraph I did not reflect her right to reimbursement under section

_____

[2] The reasons for, and repercussions of, this record will be discussed anon, as part of our analysis of Leor's motion to dismiss the appeal.

[3] All further statutory references are to the Family Code, unless otherwise indicated.

3

2640 or there was a mistake of fact/law warranting removal of paragraph I from the stipulation and judgment.

Ophira raised the following contentions: "The problem here is this: [Ophira] brought to the marriage [12] pieces of her separate property and later, during marriage, inherited another piece of separate property, all of which were rolled into the marriage's community property that is on the list of properties attached as [e]xhibits A and B to the [s]tipulation. Those properties had a collective market value of more than $1 million dollars at the time of their transmutation into community property, and [Ophira] is tracing those separate property contributions into the marital estate. [¶] In agreeing to the language in [paragraph I, Ophira] was of course not agreeing to waive her right to reimbursement under [section] 2640 in the final equalization calculations for the value of those separate properties that she contributed to the marriage." Ophira asserted her right to reimbursement is not the same as a "claim" to an asset as separate property. Alternatively, she maintained a section 2640 waiver must meet specific requirements, not satisfied by paragraph I.

Finally, Ophira argued she made a mistake of fact and law because she did not intend to "waive her separate property 147 in Israel or waive her . . . section 2640 reimbursement right." She asked the court to confirm paragraph I did not waive her right to reimbursement or set aside paragraph I and enforce the rest of the judgment.

In her supporting declaration, Ophira primarily focused on her separate property claim to "Israeli 'lots 147.'" She explained that in January 2020, she appeared at JAMS for a hearing on property management issues but she also prepared a proposed division of property. She declared, "I knew the issue of our property in Carlsbad . . . was in the San Diego Courts. I left that property out of the equation. Additionally, knowing our property in Israel was also not before this court but under the jurisdiction of the Israel court, I also left those properties off the list." Ophira stated that attending the hearing was difficult and emotional as there was a restraining order in place between the parties.

4

During settlement negotiations, Ophira agreed Leor could have the Israeli properties because the court in Israel already ordered her to sell the property and Leor would be the buyer. Ophira asserted she was emotionally and mentally exhausted after the settlement agreement and she understood paragraph I referred to property already awarded to her by the court in Israel.

In addition, Ophira claimed she did not believe she was waiving the right to trace her "separate property payments to the property." She claimed she did not receive "any consideration for such a waiver." She concluded "I never would have waived my right to reimbursement or given up my separate property lot in Israel" and "[i]f the court believes I did either of those things, I request the court to find any such waiver was an inadvertent mistake, made after one long stressful day of negotiations."

Leor filed an opposition, asserting the motion was moot because after filing the judgment the court held a hearing on several issues including the status of lots 147. The court stated its tentative ruling was that even if the court in Israel awarded lots 147 to Ophira, that interest was waived in paragraph I of the California judgment. The court asked the parties to submit supplemental briefing on this issue. In addition, Leor maintained there had been no mistake of fact or law sufficient to set aside the judgment.

On August 13, 2020, Justice Sonenshine issued a lengthy order regarding (1) Leor's ex parte request for orders requiring Ophira to sign all deeds and transfer the property located in Israel to him,[4] and (2) Ophira's motion seeking clarification. She stated these two matters were filed separately but the issues were intertwined. "Simply stated, [Ophira] maintains the [j]udgment awarded [her] all of the Israel real property *except* for her interest in [l]ots 147 and she did not waive any separate property claims to [l]ots 147 or . . . section 2640 claims. Not surprisingly, [Leor] maintains the [j]udgment awarded him *all* of the Israel property and [Ophira] waived any right to pursue separate

---

[4]         This motion is not included in the appellant's appendix.

5

property or . . . section 2640 claims." After providing a detailed summary of the underlying facts and procedural history, Justice Sonenshine ruled there was "no mistake and no need for clarification" and the stipulation and partial judgment language was "clear and unambiguous."[5] Justice Sonenshine rejected Ophira's arguments she never intended to waive her right of reimbursement claims. She granted Leor's ex parte relief and denied Ophira's motion.[6]

On October 9, 2020, Ophira filed a notice of appeal seeking to overturn the order denying her motion for clarification or to set aside a portion of the judgment. Leor filed a motion to dismiss the appeal on the following grounds: (1) the appellate court lacks jurisdiction to review a non-appealable order; (2) Ophira filed an inadequate record that includes documents not part of the superior court file warranting sanctions; and (3) Ophira improperly included citations in her opening brief to unfiled documents.

DISCUSSION

I. *Jurisdiction*

"The existence of an appealable order or judgment is a jurisdictional prerequisite to an appeal. [Citation.]" (*Canandaigua Wine Co., Inc. v. County of Madera* (2009) 177 Cal.App.4th 298, 302.) In her opening brief, Ophira asserts her appeal "is from an order after judgment made appealable under Code of Civil Procedure section 904.1, subdivision (b)." As correctly noted by Leor, this statutory provision is inapplicable because it deals with sanction orders or judgment exceeding $5,000. In her

---

[5]     We have not included in our summary the reasons the court denied Ophira's motion regarding lots 147 or the order directing Ophira to sign deeds transferring the Israeli properties to Leor. In her opening brief, Ophira asserts she is not challenging these orders in her appeal.

[6]     On our own motion, we took judicial notice of the order, filed November 2, 2020. The appellant's appendix contained a copy of the order that did not have a court file stamp. We will treat the appeal as being from the order entered on November 2, 2020. (See Cal. Rules of Court, rule 8.104(d).)

6

opposition to the dismissal motion, Ophira's counsel acknowledges this citation was an "inexplicable but unintended" error and apologized for the mistake.

The notice of appeal showed the appeal was from an order after judgment under Code of Civil Procedure section 904.1, subdivision (a)(2). This provision permits an appeal from an order following a *final* judgment. (*Ibid.*) Ophira acknowledges she is appealing from an order following a *partial* judgment on reserved issues, which did not dispose of all the parties' property issues. She maintains this distinction does not matter because the judgment did resolve the primary issue in the case concerning real property, effectively disposing of the entire case. Alternatively, she asks this court to treat the appeal as a petition for a writ of mandate because resolving this legal issue best serves the interests of economy and equity.

To constitute a judgment within the meaning of Code of Civil Procedure section 904.1, subdivision (a)(1), an order must be final. "Final" means that no further judicial action is "'essential to a final determination of the rights of the parties.'" (*Olson v. Cory* (1983) 35 Cal.3d 390, 399.) We conclude Justice Sonenshine's partial judgment was final with respect to the characterization and division of the properties included on the A and B lists, the three Israel properties, and the Apple Valley property. No further judicial action was required to determine the rights of the parties with respect to the assets distributed in the partial judgment.

This conclusion does not end our analysis. "[N]ot every postjudgment order that follows a final appealable judgment is appealable." (*Lakin v. Watkins Associated Industries* (1993) 6 Cal.4th 644, 651.) Specifically, "'[t]o be appealable, a postjudgment order must satisfy two additional requirements. . . . [¶] The first requirement . . . is that the issues raised by the appeal from the order must be different from those arising from an appeal from the judgment. . . . [¶] The second requirement

7

. . . is that "the order must either affect the judgment or relate to it by enforcing it or staying its execution."' [Citations.]" (*In re Marriage of Corona* (2009) 172 Cal.App.4th 1205, 1217.)

The pro tem's order clarifying the judgment was appealable because it satisfied those requirements. It determined the rights and liabilities of the parties arising from the judgment and would not become subject to appeal after a future judgment in the case. (See *Lezine v. Security Pacific Fin. Services, Inc.* (1996) 14 Cal.4th 56, 62.) Moreover, the portion of the order denying the motion to set aside a judgment under section 2122 was appealable. (*In re Marriage of Binette* (2018) 24 Cal.App.5th 1119, 1125.) Contrary to Leor's contention, we have jurisdiction to consider this appeal.

II. *The Record*

Leor asserts the appeal must be dismissed (and sanctions imposed) because Ophira failed to provide an adequate record for this court to review. He argues anything that transpired before Justice Sonenshine "occurred in a *vacuum*" and there is "no way to independently verify what documents Justice Sonenshine reviewed, or what argument were raised by either party at any hearing." We conclude any errors do not require dismissal of the appeal.

Leor correctly notes that the pleadings, supporting declarations, and postjudgment orders provided in appellants' appendix lack the superior court clerk's file stamp. California Rules of Court, rule 2.400(b)(1)[7] sets forth the following clear guidelines: "All original documents in a case pending before a temporary judge . . . must be filed with the clerk in the same manner as would be required if the case were being heard by a judge . . . . The filing party must provide a filed-stamped copy to the temporary judge . . . of each document relevant to the issues before the temporary judge or referee." Rule 2.400(b)(2) specifies a temporary judge "must not accept or consider

_____

[7] All further rule references are to the California Rules of Court.

any copy of [a] document unless the document has the clerk's file stamp or is accompanied by a declaration stating that the original document has been submitted to the court for filing." In this case, it appears the parties did not file documents with the superior court clerk in compliance with rule 2.400(b)(1), and Justice Sonenshine did not reject documents lacking a clerk's file stamp in compliance with rule 2.400(b)(2).

Ophira argues the failure to strictly adhere to the procedural requirements of the rule can be waived by the opposing party. (Citing *Conservatorship of Townsend* (2014) 231 Cal.App.4th 691, 704 (*Townsend*).) She explains Leor's failure to object, and his similar practice of failing to file every document with the superior court clerk, resulted in a waiver. Two wrongs do not make a right.

"[C]ases have concluded that the requirements of the rules of court, in excess of the requirements of the Constitution, are 'directory rather than mandatory.' [Citations.] '"[T]he 'mandatory' or 'directory' designation does not refer to whether a particular statutory requirement is obligatory or permissive, but instead denotes 'whether the failure to comply with a particular procedural step will or will not have the effect of invalidating the governmental action to which the procedural requirement relates.' [Citation.]" [Citation.]' [Citation]" (*Luckey v. Superior Court* (2014) 228 Cal.App.4th 81, 103, fn. 21 ["while it is not reversible error for a case to proceed before a temporary judge on an oral or implied stipulation, it is nonetheless required that such a stipulation be in writing"].)

In the *Townsend* case, the court rejected appellant's argument the deadline to appeal from a judgment could be extended by a motion to vacate that lacked a clerk filing stamp but was submitted to the temporary judge. (*Townsend, supra,* 231 Cal.App.4th at p. 702.) The appellate court concluded the rule violation rendered the motion "procedurally infirm" because the time period to file a motion to vacate was jurisdictional and could not be extended due to mistake, inadvertence, surprise, or excusable neglect. (*Ibid.*) The court rejected appellant's argument the violation could be

9

waived. "[Appellant's] argument is based upon a line of waiver cases addressing rule 2.831, setting forth the requirements for a stipulation to appoint a temporary judge. . . . The California Supreme Court determined that [rule 2.831] 'is directory rather than mandatory to the extent that it imposes requirements beyond those expressed in article VI, section 21, and that no purpose would be served by interpreting it as intended to void any action taken when the requirements of the rule were not precisely fulfilled.' [Citations]" (*Id.* at p. 704.)

The *Townsend* court explained the mandatory and directory "analysis turns on whether the requirement is intended to provide protection or benefit to individuals or instead is designed to serve some collateral, administrative purpose. [Citation.] If the requirement serves an administrative purpose, it is merely directory, not mandatory and failure to comply does not invalidate later governmental action. [Citations.]" (*Townsend, supra,* 231 Cal.App.4th at p. 704.) It determined that unlike rule 2.831, the filing requirement in rule 2.400(b)(1) did not strictly serve an administrative purpose. "Rule 2.400 is intended to ensure open access to records in any proceedings before temporary judges and referees. [Citation.] The Judicial Council advisory committee's report indicates that . . . the filing requirement 'ensure[s] that the court clerk's office has the complete case file and can make all nonconfidential portions of the file available to the public, as it does in any equivalent case being heard by the court.' [Citation.]" (*Id.* at p. 705.)

The court in *Townsend* stated, "The jurisdictional time limits to appeal presuppose that filed documents are open and available to the public, 'in accordance with California's "long-standing tradition of open civil proceedings." [Citation.]' [Citation.]" (*Townsend, supra,* 231 Cal.App.4th at p. 705.) "While there may be circumstances in which the failure to file documents with the superior court clerk as required under rule 2.400(b) may be waived, a motion to vacate is not one of those circumstances. There are substantive differences between submitting to a temporary judge a trial brief or a motion

10

to vacate.  A motion to vacate focuses the parties on the appellate process and challenges to the appealable judgment. . . . We have no authority to rewrite the statute to create exceptions in section 663a, subdivision (a) in proceedings before a temporary judge where the parties submit the motion to vacate to the temporary judge but do not file it with the clerk." (*Id.* at pp. 705-706.)

In the case before us, the parties' and the judge pro tem's violations of rule 2.400(b) kept postjudgment proceedings secret from the public.  While this is concerning, it did not create a jurisdictional problem or require dismissal of the appeal.  Ophira's submission of these documents in her appellant's appendix alleviates the public access issue.  We are not persuaded by Leor's assertion this rule violation requires us to dismiss the appeal because we will be unable to "independently verify" which documents Justice Sonenshine considered or what arguments were made at the hearings.  These points are unrelated to the public access reasons why documents should have clerk file stamps.  We must presume the judge pro tem regularly performed her official duties (Evid. Code, § 664), which would include consideration of submitted documents.  In addition, an appellant does not have the obligation to verify or authenticate documents.  Rule 8.124(g) provides: "Filing an appendix constitutes a representation that the appendix consists of *accurate copies* of documents in the superior court file.  The reviewing court may impose monetary or other sanctions for filing an appendix that contains inaccurate copies or otherwise violates this rule." (Italics added.)

Leor offers us no reason to doubt Ophira satisfied her duty to provide accurate copies of the documents submitted to Justice Sonenshine.  We do not read the rule to require file stamped copies of documents.  Case authority simply requires that the documents "were before the trial court." (*Steroid Hormone Product Cases* (2010) 181 Cal.App.4th 145, 151, fn. 6 [court need not consider portions of deposition transcripts not submitted in support or opposition of motion].)  Having concluded we

11

have jurisdiction to consider the appeal, and there are accurate documents from which to review the ruling, we deny the motion to dismiss the appeal and request for sanctions.[8]

III. *Motion to Clarify Paragraph I*

Ophira asserts the judgment was unclear as to whether she waived a reimbursement claim permitted by section 2640, subdivision (b). She argues the court erred because she "had a discrete right of reimbursement—a vested property right, apart from any claim she might have advanced that she separately owned any of the properties subsumed in the parties' stipulated judgment." She maintains the "critical issue" before Justice Sonenshine was whether she waived her right to seek reimbursement and Ophira submitted undisputed evidence she contributed premarital separate property to the community estate. She concludes there was "direct and unequivocal" evidence presented in her declaration and her attorney's declaration to prove she did not knowingly or voluntarily renounce her right to be reimbursed. She stated, "[t]he result should have been a simple clarification" given the clarity of the law and "complete lack of any evidence that either party at the time they executed the stipulation intended it to resolve or otherwise waive Ophira's [s]ection 2640 right to reimbursement."

Section 2640, subdivision (b), provides, in pertinent part: "In the division of the community estate under this division, unless a party has made a written waiver of the right to reimbursement or has signed a writing that has the effect of a waiver, the party shall be reimbursed for the party's contributions to the acquisition of property of the community property estate to the extent the party traces the contributions to a separate property source."

---

[8]     The motion to dismiss requested, as alternative relief, that we strike portions of the briefing and the appendix. For the reasons stated above, we deny this request.

"'Waiver [of section 2640 reimbursement rights] requires a voluntary act, knowingly done, with sufficient awareness of the relevant circumstances and likely consequences. [Citation.] . . . There must be '. . . an actual intention to relinquish it or conduct so inconsistent with the intent to enforce that right in question as to induce a reasonable belief that it has been relinquished.' [Citation.]" (*In re Marriage of Perkal* (1988) 203 Cal.App.3d 1198, 1203.) Accordingly, an agreement transmuting separate property into community property does not, in and of itself, waive a contributing spouse's statutory right to reimbursement unless it includes additional language that expressly waives or "has the effect" of waiving that right. (§ 2640; See *In re Marriage of Carpenter* (2002) 100 Cal.App.4th 424, 429 (*Carpenter*) [no waiver despite premarital agreement stating property deemed community property and quitclaim deed specifying was community property].) "Section 2640 does not require the magic words 'I waive reimbursement'"; it requires only a writing that has the "effect of a waiver." (*Carpenter, supra,* 100 Cal.App.4th at p. 427.)

"Generally, the determination of waiver is a *question of fact*, and the trial court's finding, if supported by sufficient evidence, is binding on the appellate court. [Citations.] 'When, however, the facts are undisputed and only one inference may reasonably be drawn, the issue is one of law and the reviewing court is not bound by the trial court's ruling.' [Citation.]" (*St. Agnes Medical Center v. PacifiCare of California* (2003) 31 Cal.4th 1187, 1196, italics added.)

Here, Ophira does not claim the facts were undisputed, but rather that her evidence was "direct and unequivocal." That is not sufficient to invoke de novo review. As mentioned, we are bound by the court's factual findings if supported by substantial evidence. (*In re Marriage of Ciprari* (2019) 32 Cal.App.5th 83, 93-94). The judge pro tem's orders reflect she had a different recollection about what transpired during the case and when the parties negotiated the settlement. For example, she wrote the parties not only agreed on the properties to be awarded but also "waived any separate property

13

interest in that property and all issues between them were resolved but for the 28 delineated matters." In making this determination, Justice Sonenshine referred to and recited Ophira's responses to discovery, the settlement terms, and that Ophira had two years to "produce a tracing" and substantiate her section 2640 claims. She disagreed with Ophira's claim there was no bargained for exchange for waiver of her right to reimbursement. She concluded, "consideration is found in the [s]tipulation itself as [Ophira and Leor] both received and gave on certain issues."

Ophira's briefing discusses only her own evidence, without mentioning the court's factual findings or including an accurate summary of all the evidence referred to in the court's order. """"An appellant challenging the sufficiency of the evidence to support the judgment must [describe] the evidence in the record supporting the judgment and explain why such evidence is insufficient as a matter of law. [Citations.] An appellant who fails to cite and discuss the evidence supporting the judgment cannot demonstrate that such evidence is insufficient."' . . . Accordingly, a party challenging the judgment for lack of substantial evidence must "'set forth, discuss, and analyze *all* the evidence on that point, *both favorable and unfavorable*.'" [Citation.] 'Unless this is done the error is deemed to be waived.' [Citation.]" (*Vendor Surveillance Corp. v. Henning* (2021) 62 Cal.App.5th 59, 76-77.) Ophira's challenges to the sufficiency of the evidence was waived due to her decision to merely cite her own favorable evidence. She did not meet her burden of showing there was insufficient evidence to support the court's factual finding Ophira waived her right to reimbursement (§ 2640).

IV. *Standard of Review & Legal Principles*

In addition to seeking clarification, Ophira's motion sought to set aside paragraph I from the judgment. A party may move to set aside a family court stipulated judgment on the grounds of "mistake, either mutual or unilateral, whether mistake of law or mistake of fact" if the motion is "brought within one year" after judgment is entered. (§ 2122, subd. (e).) "[B]efore granting relief, the court shall find that the facts alleged as

14

the grounds for relief materially affected the original outcome and that the moving party would materially benefit from the granting of the relief." (§ 2121, subd. (b).)  A "judgment may not be set aside simply because the court finds that it was inequitable when made, nor simply because subsequent circumstances caused the division of assets or liabilities to become inequitable . . . ."  (§ 2123.)

We review the court's ruling for abuse of discretion.  (*In re Marriage of Rosevear* (1998) 65 Cal.App.4th 673, 682 (*Rosevear*).)  Under this standard, "[t]he trial court's findings of fact are reviewed for substantial evidence, its conclusions of law are reviewed de novo, and its application of the law to the facts is reversible only if arbitrary and capricious." (*Haraguchi v. Superior Court* (2008) 43 Cal.4th 706, 711-712.)  "'"The appropriate test for abuse of discretion is whether the trial court exceeded the bounds of reason.  When two or more inferences can reasonably be deduced from the facts, the reviewing court has no authority to substitute its decision for that of the trial court.'"  [Citations.]  The burden is on the complaining party to establish abuse of discretion. [Citations.]  The showing on appeal is insufficient if it presents a state of facts which simply affords an opportunity for a difference of opinion.  [Citations.]"  (*Rosevear, supra,* 65 Cal.App.4th at p. 682.)

In reviewing the court's factual findings, we "'examine the evidence in the light most favorable to the prevailing party and give that party the benefit of every reasonable inference.  [Citation.]  We accept all evidence favorable to the prevailing party as true and disregard contrary evidence.  [Citation.]'  [Citation.]  'We do not reweigh the evidence or reconsider credibility determinations.  [Citation.]'"  (*In re Marriage of Calcaterra & Badakhsh* (2005) 132 Cal.App.4th 28, 34.)  It is a fundamental rule of appellate law that the lower court's judgment is presumed to be correct.  (*Jameson v. Desta* (2018) 5 Cal.5th 594, 608-609.)  An appellate court "'"must *presume* that the record contains evidence to support every finding of fact . . . ."'  [Citations.]  It is the appellant's burden . . . to identify and establish deficiencies in the evidence.  [Citation.]

15

This burden is a 'daunting' one." (*Huong Que, Inc. v. Luu* (2007) 150 Cal.App.4th 400, 409.)

A. *Unilateral Mistake*

Under section 2122, subdivision (e), a mutual or unilateral mistake is sufficient to support a set-aside order, and the mistake can be one of fact or law. (*In re Marriage of Brewer & Federici* (2001) 93 Cal.App.4th 1334, 1346-1348 (*Brewer*). Because spouses owe each other a fiduciary duty, a spouse may make a "mistake of fact" warranting relief from a marital judgment when (1) she is unaware of the true facts, (2) the other spouse was in a "superior position to gain access" to those facts, and (3) the other spouse had a fiduciary duty to disclose those facts. (*Id.* at p. 1348.)

For example, in *In re Marriage of Varner* (1997) 55 Cal.App.4th 128, 130 (*Varner*), husband misrepresented the value of assets and prevented wife (who was not represented by counsel) from having access to information to correctly value those assets. The appellate court concluded Husband's failure to disclose the value of the community assets was grounds to set aside the judgment on the basis of mistake. (*Id.* at p. 144.) In *Brewer,* the court affirmed an order on Husband's motion to set aside the judgment based on evidence Wife failed to disclose substantial assets. (*Brewer, supra,* 93 Cal.App.4th at p. 1337.)

In her opening brief, Ophira asserts her motion was "based on critical mistakes of both fact and law concerning her right under [s]ection 2640 to seek reimbursement from Leor for the numerous properties" she brought into the marriage. We agree with Leor that this assertion does not clearly state what kind of mistake she believes occurred in this case. It does not appear to be a mistake of fact because unlike the wives in the *Brewer* and *Varner* cases, Ophira was well aware of her separate property contributions to acquire community property. In her declaration supporting the section 2122 motion, Ophira stated, "I had made clear from the beginning, in letters to Petitioner's counsel and on prior pleadings, that on the date of our marriage, I had

16

multiple separate property rental properties and those properties were valued at approximately $1,250,000.00, and were rolled over into our community estate, most times by [tax-deferred exchanges under 26 United States Code section1031]. I am still tracing those assets." She does not assert Leor misrepresented or kept information from her about her right to reimbursement. Rather, it appears Ophira had an equal if not better ability than Leor to trace her purported separate property right to reimbursement.

If Ophira intended to set aside the judgment based on a mistake of law, we would have to speculate as to what legal principle she is referring to. "An honest mistake of law is a valid ground for relief when the legal problem posed '"is complex and debatable."' [Citations.] The controlling factors in determining whether a mistake of law is excusable are the reasonableness of the misconception and the justifiability of the failure to determine the correct law. [Citation.] '[W]here the court finds that the alleged mistake of law is the result of professional incompetence based upon erroneous advice [citation], general ignorance of the law or lack of knowledge of the rules [citation], or unjustifiable negligence in the discovery or research of the law, laxness or indifference [citations][,] normally relief will be denied.' [Citation.] There is nothing in [Code of Civil Procedure] section 473 [or section 2122] to suggest it 'was intended to be a catch-all remedy for every case of poor judgment on the part of counsel which results in dismissal.' [Citation.]" (*State Farm Fire & Casualty Co. v. Pietak* (2001) 90 Cal.App.4th 600, 611-612.)[9]

---

[9] Legal authority regarding Code of Civil Procedure section 473 is applicable to section 2122 matters. These statutory provisions "coexist, operating as alternative bases for relief, depending on when the application is filed." (*In re Marriage of Heggie* (2002) 99 Cal.App.4th 28, 32.)

17

Perhaps recognizing her opening brief did not clearly articulate what purported mistake qualifies as grounds to set aside the judgment, Ophira's reply brief asserts the mistake was *clearly stated in her declaration* in support of her section 2122 motion. She recited several excepts from her declaration, including statements that she misunderstood the meaning the language used in the judgment and she never would have agreed to the stipulation if she understood it meant waiving her right to reimbursement. Her declaration contains language asserting that if the court determined the stipulation contained a section 2640 waiver, that it "find any such waiver was a[n] inadvertent mistake, made after one long stressful day of negotiations." Thus, it appears Ophira sought to set aside the judgment based on her own alleged misunderstanding of the legal ramifications of language used in the judgment. She subjectively believed paragraph I would not preclude her from later seeking her right of reimbursement.

There are several problems with this new argument, the primary one being Leor had no opportunity to respond. "The California Supreme Court long ago expressed its hostility to the practice of raising new issues in an appellate reply brief." (*Reichardt v. Hoffman* (1997) 52 Cal.App.4th 754, 764.) "'Obvious reasons of fairness militate against consideration of an issue raised initially in the reply brief of an appellant.' [Citation.]" (*Ibid.*) In addition, Ophira appears to have forgotten she was represented by counsel, who presumably would have understood a section 2640 reimbursement must be made *prior* to the division of the community property. (*In re Marriage of Walrath* (1998) 17 Cal.4th 907, 913 (*Walrath*) [separate property contribution assessed prior to division because "there is insufficient equity at the time of dissolution in the property to which the contribution was made to fully reimburse the contribution, the entire asset is awarded to the contributing spouse"]; *In re Marriage of Geraci* (2006) 144 Cal.App.4th 1278, 1286.)

18

If Ophira wished to assert there was an honest mistake of law, she needed to discuss the applicable legal authority and present reasoned analysis explaining why the court was wrong in denying section 2122 relief due to a legal mistake. "'One cannot simply say the court erred, and leave it up to the appellate court to figure out why. [Citation.]' [Citation.]" (*Jewish Community Centers Development Corp. v. County of Los Angeles* (2016) 243 Cal.App.4th 700, 716.) "It is not our responsibility to develop an appellant's argument. [Citation.]" (*Alvarez v. Jacmar Pacific Pizza Corp.* (2002) 100 Cal.App.4th 1190, 1206, fn. 11.) Her argument also falls short because she signed the stipulated judgment several months *after* the emotionally charged settlement negotiations. She does not assert the stress of a long day of negotiations extended beyond that time.

On a final note, if Ophira truly believed there had been a factual or legal mistake in this case, she should have moved to set aside the entire stipulated judgment and not just one paragraph. As noted by Justice Sonenshine, the parties' settlement reflected compromises and bargained for transfers of multiple properties and paragraph I was intertwined with other provisions of the parties' agreement. Moreover, any right to reimbursement would come off the top of the specific property that received Ophira's contribution. The reason why a separate property contribution is assessed *prior* to division is because if there is insufficient equity to reimburse the contribution the property is awarded to the contributing spouse. (*Walrath, supra,* 17 Cal.4th at p. 913.) After dividing the property, it would be unfair to permit Ophira to seek a full reimbursement from other assets, such as bank accounts and retirement plans.

## DISPOSITION

The postjudgment order is affirmed. The motion to dismiss, which

19

included a request to strike and sanctions, is denied.  Respondent shall recover his costs on appeal.

                                            O'LEARY, P. J.

WE CONCUR:


GOETHALS, J.


MARKS, J.*

*Judge of the Orange Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

20